STATE OF NORTH CAROLINA v. NORRIS CARLTON TAYLOR

No. 108

(Filed 3 November 1981)

1. **Indictment and Warrant § 13.1— no constitutional right to bill of particulars stating aggravating circumstances**

   The aggravating circumstances enumerated in G.S. 15A-2000(e), upon which the State may rely in seeking appropriate punishment, provide sufficient statutory notice to meet the constitutional requirement of due process; therefore, the trial judge did not abuse his discretion by denying defendant's motion for a bill of particulars stating the aggravating circumstances upon which the State would rely in seeking the death penalty.

2. **Criminal Law § 135.3; Jury § 7.11— "death qualification" questions of prospective jurors proper—no right to separate jury for penalty phase**

   Excluding jurors because of their opposition to the death penalty, "death qualification," is proper, and the same jury should hear both the guilt/innocence and the penalty phases of the trial unless the original jury is "unable to convene." G.S. 15A-2000(a)(2).

3. **Criminal Law § 50.2; Jury § 7.11— opinion testimony—not qualified as an expert**

   The trial court did not err in failing to allow defendant's witness to testify as to his opinion of the prejudices white jurors unopposed to capital punish-

ment would be likely to harbor against a black criminal defendant as the testimony was quite clearly his own opinion, and thus admissible only if he was qualified as an expert witness by the trial court, and the witness was never offered as an expert or qualified as such.

### 4. Jury § 5.2— testimony concerning make-up of jury list properly excluded

The court properly sustained the State's objection to a question of the chairman of a county's jury commission asking him how he could explain the fact that 23% of the county's population was black but only 17% of the jury list was black as any answer would have been based on speculation or conjecture.

### 5. Jury § 5.2— no systematic discrimination in jury pool

Defendant failed to establish a *prima facie* violation of the Sixth Amendment fair cross-section requirement for juries where the disparity in the racial composition of the jury was only 6.3% and the jury pool was compiled as required by G.S. 9-2.

### 6. Bills of Discovery § 6; Constitutional Law § 30— due process right to discovery at sentencing phase

Defendant's due process right to discover elements of the State's case at the sentencing phase does not exceed such due process right at the guilt/innocence phase of trial. Any constitutional due process right of discovery which defendant might have had was satisfied by the district attorney's providing defendant with his "entire file," with specific notice as to which of the aggravating circumstances the State would rely upon, and with an outline of the evidence the State would present. G.S. Chapter 15A, Article 48.

### 7. Jury § 6.2— examination of prospective jurors—hypothetical questions

The trial court did not abuse its discretion in refusing to allow defendant to ask questions of prospective jurors concerning the death penalty which were overly broad and thus improper because, as hypotheticals, they were incomplete.

### 8. Jury § 7.11— refusal of jurors to consider death penalty

Fifteen prospective jurors who responded that they could never consider the death penalty were properly excused for cause.

### 9. Criminal Law § 168.2— error in instructions to jury pool corrected

Incomplete instructions to the jury pool concerning their duty should the trial reach the sentencing phase were not prejudicial error as correct instructions were given to the jury during the sentencing phase.

### 10. Criminal Law § 66.1— competency of witnesses' in-court identifications

All three in-court identifications of the defendant by the State's witnesses were competent as two of the three were witnesses to the shooting of one of the victims and watched the defendant under good light conditions at a short distance, and the third witness was a taxi driver who transported the defendant in his cab for about 15 minutes and observed defendant's face for about 3 minutes.

State v. Taylor

**11. Criminal Law § 169.3— inflammatory testimony admitted without objection**

When evidence that one of the victims was pregnant at the time she was shot was admitted without objection, the benefit of a later objection was lost.

**12. Criminal Law § 34.2— admission of evidence of other crimes harmless error**

Testimony about statements made by defendant to a witness about other crimes he had committed and statements made by defendant to police concerning his kidnapping of the witness were improperly admitted; however, given the overwhelming evidence against defendant, it was clear that the error was harmless beyond a reasonable doubt. G.S. 15A-1443.

**13. Criminal Law § 82.2— examination of criminal defendant by psychiatrist—no physician-patient privilege**

A psychiatrist appointed by the court to determine whether defendant was competent to stand trial, whether there were any mitigating circumstances for defendant, and whether defendant could possibly plead insanity was a witness for the court; therefore, there was no error in allowing the written evaluation of defendant to be released to the district attorney as no physician-patient privilege existed. G.S. 15A-1002(d), as it appeared at the time of trial, vested an implicit power in the trial court to order the report released. G.S. 8-53.

**14. Kidnapping § 1.3— vagueness of charge to jury—possible variance between indictment and charge**

Where the indictment for a crime alleges a theory of the crime, the State is held to proof of that theory and the jury is only allowed to convict on that theory. Therefore, where the indictment charged that defendant kidnapped Biles for the purpose (1) of committing armed robbery and assault on him, and (2) to facilitate his flight after committing the felonies of armed robbery and murder in his crimes against Mrs. Murchison, and in charging the jury the trial judge did not specify either purpose expressed in the indictment, there was error in the vagueness of the judge's charge because the jury could have convicted the defendant of kidnapping Biles to facilitate his flight after the armed robbery of *Biles*, a charge not named in the indictment. G.S. 14-39.

**15. Homicide § 25.1— felony-murder rule—instruction**

In felony murder cases, the law in this State is that premeditation and deliberation are presumed; therefore, an instruction that the intent of the defendant did not matter was not erroneous.

**16. Criminal Law § 135.4— admission of testimony refuting mitigating circumstances harmless error**

Admission of testimony offered by the State solely to refute mitigating circumstances upon which defendant might later rely was error; however, it was harmless beyond a reasonable doubt as (1) much of the testimony objected to by defendant, in addition to rebutting mitigating circumstances, also was competent as evidence of aggravating circumstances, and (2) a review of the evidence shows that the jury had before it a clear record of what must be described as defendant's unconscionable acts toward many of his victims. G.S. 15A-2000(e)(4), G.S. 15A-2000(f), and G.S. 15A-1443(b).

**17. Criminal Law § 66.3 — in-court identification — failure to disclose out-of-court procedures — opportunity to test credibility of witnesses**

Defendant's argument that he was unable to refute the testimony of two witnesses who made in-court identifications of him because the State did not disclose information concerning the procedures used when these witnesses made out-of-court identifications is without merit since defendant had every opportunity to test the credibility of the witnesses or to call as witnesses the investigating officers during the voir dire hearing held before their testimony was received.

**18. Criminal Law § 135.4 — sentencing phase — evidence of prior crime admissible**

Upon the conviction of first degree murder, evidence that defendant was convicted for the crime of rape in Virginia in 1969 and was sentenced to ten years in prison was admissible at the sentencing phase to support the aggravating circumstance that "defendant had been previously convicted of a felony involving the use or threat of violence to the person." G.S. 15A-2000(e)(3).

**19. Criminal Law § 135.4 — sentencing phase — testimony concerning previous crimes after stipulation of guilt by defendant not error**

Both the defendant and the State should be allowed to introduce evidence in support of aggravating and mitigating circumstances which have been admitted into evidence by stipulation in the sentencing proceeding. Therefore, testimony by a forensic pathologist who performed an autopsy on a victim whom defendant was convicted of murdering in 1978 was properly admitted even though defendant stipulated that he had been found guilty of that murder. G.S. 15A-2000(e)(2).

**20. Criminal Law § 85.2 — cross-examination of "character" witness — broadened by direct examination**

Testimony of defendant's character witness concerning defendant's troubled youth, his being sent to reform school, and his marriage and children moved her testimony beyond the bounds of merely being a character witness and thus expanded the scope of permissible cross-examination. Therefore, questions asked of her by the district attorney concerning particular acts of misconduct by defendant and questions about her possible bias were proper.

**21. Criminal Law §§ 63, 169.7 — improper admission of testimony cured by subsequent admission of similar evidence**

It was error to permit the district attorney to cross-examine defendant's psychiatrist using a report about defendant's competency to stand trial made by a second psychiatrist who did not testify; however, the improper admission of the testimony was cured when substantially the same evidence was later admitted on redirect examination by the defendant.

**22. Criminal Law § 135.4 — sentencing proceeding — cross-examination of prison warden concerning security**

Where defendant offered the testimony of the Deputy Warden at Central Prison concerning security procedures used to manage prisoners for the purpose of assuring the jury that, should they recommend a sentence of life, defendant would not be able to harm any of his fellow inmates, cross-

examination of the witness about a specific murder committed in Central Prison placed before the jury irrelevant evidence of an unrelated crime but did not constitute prejudicial error.

**23. Criminal Law § 135.4— sentencing hearing—inadmissibility of affidavits concerning death penalty**

The trial court did not err under G.S. 15A-2000(f) by excluding testimony by defense witnesses on the religious, ethical, legal and public policy perspectives of capital punishment as it was totally irrelevant and of no probative value as mitigating evidence in the sentencing phase of defendant's trial.

**24. Criminal Law § 135.4— conviction under felony-murder rule—underlying felony not aggravating circumstance**

The trial court erred in submitting as one of three aggravating circumstances the question: "Was this murder committed while Norris Carlton Taylor was engaged in the commission of the felony of robbery?" as "when a defendant is convicted of first degree murder under the felony murder rule, the trial judge shall not submit to the jury at the sentencing phase of the the trial the aggravating circumstance concerning the underlying felony." However, the error was harmless beyond a reasonable doubt as overwhelming evidence supporting other statutory aggravating factors convinced the Court that the weighing process in the jury's decision to impose the death penalty was not compromised.

**25. Criminal Law § 135.4— murder committed in perpetration of robbery—submission of aggravating circumstance of commission for pecuniary gain**

In a felony-murder case in which the underlying felony was robbery, it was not error for the trial court to instruct the jury that they could consider as an aggravating circumstance that the murder was committed for pecuniary gain as this circumstance examines the motive of defendant rather than his acts.

**26. Criminal Law § 135.4— sentencing proceeding—instructions on mental or emotional disturbance as mitigating circumstances**

The trial court's instructions on the mitigating circumstances found in G.S. 15A-2000(f)(2) and (6), mental or emotional disturbance and impaired capacity of the defendant, were sufficient where the jury was instructed that, in order to find a mitigating circumstance, they must find by a preponderance of the evidence that defendant was "in any way affected or influenced by a mental or emotional disturbance," and the jury could find a second mitigating circumstance if it determined that the defendant "was for any reason less able than a normal person to do what the law requires or to refrain from what the law forbids."

Justice EXUM concurring in part and dissenting in part.

APPEAL by defendant from judgments entered by *Judge Gavin* at the 28 May 1979 Special Criminal Session of Superior Court, NEW HANOVER County. This case was docketed and argued as No. 8, Spring Term 1981.

Upon pleas of not guilty, defendant was tried upon two bills of indictment, proper in form, charging first degree murder and armed robbery (79CRS6425) and aggravated kidnapping, armed robbery, and assault with a deadly weapon with intent to kill inflicting serious bodily injury (79CRS6426). Defendant was found guilty as charged. For his conviction of first degree murder under the felony murder rule, defendant was sentenced to death. For his conviction of kidnapping, defendant was sentenced to a term of eighty years minimum, eighty years maximum. For his conviction of armed robbery (second count), defendant was sentenced to a term of eighty years minimum, eighty years maximum to begin at the expiration of and run consecutively to the sentence imposed on the count of kidnapping. For his conviction of assault with a deadly weapon with intent to kill inflicting serious bodily injury, defendant was sentenced to a term of twenty years minimum, twenty years maximum to commence at the expiration of and run consecutively to the sentence he received on the count of armed robbery. From the judgments and commitments entered, the defendant appealed. Defendant's motion to bypass the Court of Appeals on the convictions for armed robbery (second count), kidnapping and assault with a deadly weapon with intent to kill inflicting serious bodily injury was allowed 19 November 1980.

*Rufus L. Edmisten, Attorney General by Assistant Attorney General Donald W. Stephens and Special Deputy Attorney General Isaac T. Avery III for the State.*

*Mary Ann Tally, Public Defender, for the defendant.*

MEYER, Justice.

This appeal presents sixty-two assignments of error for our review. No meaningful summary statement of these numerous assignments is possible. Each of the assignments susceptible of merit is treated separately. Our conclusion is that defendant is entitled to a new trial on the kidnapping charge. On all other charges, we find no error.

In relevant summary the facts are: On 30 August 1978, Patty Bazemore was accosted by the defendant in Woodland, North Carolina. At gunpoint, he forced her to drive with him, in her automobile, to Fayetteville, where they spent the night in the park. The next day defendant told Bazemore that they would

leave her car and try to obtain another, because defendant was afraid the police would be looking for the Bazemore automobile. Defendant was unsuccessful in his efforts to secure another car, and that night, 31 August 1978, Bazemore and defendant slept on a railroad track. On the morning of 1 September 1978, defendant left Bazemore in a downtown park, warning her not to move, and went to obtain a car.

Clarence Edward Davis testified for the State that he was in the parking lot of the Cardinal Building in Fayetteville on the morning of 1 September 1978. As he watched, he saw a man whom he identified as defendant come out from behind the building, cross a wall and approach a young woman, later identified as Mrs. Murchison, who had just parked her car. Davis testified that the two argued, the defendant apparently wanting her pocketbook and car keys. As Mrs. Murchison turned away, Davis said he heard two gunshots and saw Mrs. Murchison stagger. Defendant fled in Murchison's car, a tan 1976 Buick Electra 225 with two doors, passing within fifteen to twenty feet of Davis.

Defendant then returned to where he had left Bazemore and ordered her into the car. Within five minutes defendant and Bazemore abandoned the car, went to the bus station nearby and took a taxi to Eutaw Shopping Center. Across the street from the shopping center was a Winn Dixie grocery store, and in the parking lot of that store defendant approached Malcolm Biles. Defendant told Biles that he had had car trouble, and Biles offered to help. Once in Biles' car, a 1974 Cadillac Coupe de Ville, defendant brandished a handgun and ordered Biles to drive. After driving for a time, defendant ordered Biles to stop the car. Defendant then locked Biles in the trunk of the car and began driving. Biles became uncomfortable in the trunk and began to make noise by beating on the trunk with the tire iron. Defendant stopped the car, ordered Biles into the back seat, and drove on. A short time later defendant turned off onto a dirt road, forced Biles into the woods and shot him.

Defendant then drove into the town of Woodland, North Carolina, and released Patty Bazemore. As defendant drove out of town, he was observed by Roosevelt Britt, a part-time Woodland police officer. Defendant was captured after a high-speed chase and taken to the Sheriff's Department in Jackson, North Carolina.

Other facts necessary for an understanding of the questions posed on appeal are included in the body of the opinion.

We now consider defendant's assignments of error:

GUILT/INNOCENCE PHASE

I.

[1] Defendant brings forward as his assignment of error number 1 the denial by the trial court of his motion for a bill of particulars stating the aggravating circumstances upon which the State would rely in seeking the death penalty.[1] Defendant made that motion in pretrial proceedings, and renewed it immediately after the jury returned a verdict of guilty of first degree murder. Judge Canady denied the earlier motion, and upon the later motion Judge Gavin found that the State had fully complied with the statutory discovery procedures and therefore also denied the motion.

By his brief, defendant argues that in a trial for first degree murder where the State seeks the death penalty, the defendant is entitled as a matter of constitutional right, guaranteed by the sixth, eighth and fourteenth amendments to the United States Constitution, to notice, prior to trial, of any and all aggravating circumstances upon which the State intends to rely in seeking the death penalty. Failure to require the State to give such particularized notice, says defendant, violates due process requirements that a defendant be fully apprised of the charge against him, and also interferes with defendant's right to effective assistance of counsel.

Defendant's first contention arises from his characterization of this State's capital punishment law as "an enhanced punishment law." The defendant contends that the presumed punishment for first degree murder in North Carolina is life imprisonment. Therefore, if the State intends to rely on a statute providing for enhanced punishment, *i.e.* death, such a statute

---

1. Defendant's assignment of error number 1 is very similar to assignment number 33, which charges error in the trial court's denial of defendant's oral motion to disclose aggravating circumstances and information relevant to sentencing, made by defendant immediately prior to the penalty phase. Accordingly, these two assignments are treated together.

should, as a matter of constitutional law, require separate pleadings with respect to the enhancing circumstance. The practical effect of agreeing with defendant's argument would be paramount to saying that by proceeding on a theory of aggravation the State has in effect brought a separate charge against defendant, requiring separate pleadings. We decline to reach such a result.

To begin with, we do not find defendant's characterization of life imprisonment as the "presumed" punishment to be accurate. It is true that life imprisonment is, under G.S. 15A-2000, the minimum punishment, but no sentence can be imposed until after a separate sentencing phase. The factors enumerated in G.S. 15A-2000 are not elements of the offense but rather are guidelines defining the parameters of the jury's discretion in determining punishment. The only aggravating circumstances upon which the State may rely are enumerated in G.S. 15A-2000(e). Consistent with the holding in *Spinkellink v. Wainwright*, 578 F. 2d 582 (5th Cir. 1978), *cert. denied*, 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed. 2d 796 (1979), we hold that this statutory notice is sufficient to meet the constitutional requirement of due process. *See Clark v. State*, 379 So. 2d 97 (Fla. 1979), *cert. denied*, 450 U.S. 936, 101 S.Ct. 1402, 67 L.Ed. 2d 371 (1981); *Bowden v. Zant*, 244 Ga. 260, 260 S.E. 2d 465 (1979); *cert. denied*, 444 U.S. 1103, 100 S.Ct. 1068, 62 L.Ed. 2d 788 (1980); *Houston v. The State*, 593 S.W. 2d 267 (Tenn. 1980); *State v. Berry*, 592 S.W. 2d 553 (Tenn. 1980).

Defendant is not entitled to notice of the evidence which the State intends to offer in support of and to prove aggravating circumstances. Although some other states which also leave the question of punishment to the jury do require the prosecution to provide evidence to defendant of the aggravating circumstances the State will pursue, such a requirement is purely statutory. *See e.g.* Delaware Code Ann. 11 § 4209(c)(1) (1979); Georgia Code Ann. § 27-2503 (1978); Maryland Code Ann. Art. 27, § 412(b) (Cum. Supp. 1978). Our legislature has not enacted such a requirement. G.S. 15A-925 provides that a defendant may move for a bill of particulars requesting items of factual information which "pertain to the charge" and without which "the defendant cannot adequately prepare or conduct his defense . . . ." The indictments were sufficient to provide defendant with a factual basis necessary to

understand the State's cases against him. Defendant was adequately apprised of the charge by the State and was provided with evidence necessary to the preparation of his defense. A motion for a bill of particulars is addressed to the sound discretion of the trial court and not subject to review except for palpable and gross abuse of discretion. *State v. Silhan*, 302 N.C. 223, 275 S.E. 2d 450 (1981); *State v. Swift*, 290 N.C. 383, 226 S.E. 2d 652 (1976). We find no abuse of that discretion here. Accordingly, this assignment of error is overruled.

## II.

Defendant next contends in assignment of error number 2 that the trial court erred in allowing an assistant district attorney to testify as to a material fact during a hearing on a motion to suppress statements of the defendant. Defense counsel argues that this testimony violated professional ethical standards because the assistant district attorney is in effect a member of the "law firm" prosecuting this defendant. This argument was considered and dismissed as meritless by this Court in a previous opinion involving this same defendant. *See State v. Taylor*, 301 N.C. 164, 270 S.E. 2d 409 (1980). Once again we deem this argument completely without merit.

## III.

Defendant's assignment of error number 3 charges error in the denial by the trial court of defendant's motion to suppress certain statements made by defendant. The record before us shows that at the time defendant was arrested, he was ordered at gunpoint to lay on the ground as he was handcuffed and read his *Miranda* rights. A hostile crowd began to gather. After defendant was read his rights and defendant acknowledged that he understood them, Chief Sandlin, the arresting officer, asked where Miss Bazemore and Malcolm Biles were. Defendant answered that he had released Miss Bazemore unharmed and had shot Mr. Biles on Highway No. 97. Defendant now complains that his statements to Chief Sandlin were not voluntarily made since he was being held at gunpoint and was surrounded by a hostile crowd. This contention, and defendant's companion objections to the admissibility of statements later made by defendant to police investigators were treated in our opinion in *State v. Taylor*, 301 N.C. 164, 270 S.E. 2d 409 (1980). We deem it unnecessary to

retread ground so ably covered by Justice Carlton in that opinion. Accordingly, this assignment is overruled.

## IV.

[2] By assignments of error numbers 4 and 5, defendant complains first of the trial court's denial of his motion for separate juries in the guilt/innocence and penalty phases of the trial; and second, of the court's denial of his motion challenging "death qualification" *voir dire* questions of the jury by the district attorney.

In essence, defendant contends that allowing the State to exclude jurors from the guilt/innocence phase of trial because of their opposition to the death penalty which might be imposed in the sentencing phase is unconstitutional. Such a procedure, says defendant, eliminates a substantial group of jurors who would be able to determine guilt or innocence at the first phase of trial. Defendant argues that empirical evidence shows that this exclusion produces a jury more punitive in legal matters and less tolerant of minorities.

To begin with, this Court has previously held that so-called "death qualification" of jurors is proper. *State v. Cherry*, 298 N.C. 86, 257 S.E. 2d 551 (1979). In *State v. Avery*, 299 N.C. 126, 261 S.E. 2d 803 (1980), this Court found unpersuasive the argument that "death qualification" of jurors during the guilt phase of trial produces a "prosecution prone jury skewed against Negroes and the lower economic classes." *Id.* at 137, 261 S.E. 2d at 810. There Justice Brock cited *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed. 2d 776, *rehearing denied*, 393 U.S. 898 (1968), wherein the U.S. Supreme Court said that it could not "conclude either on the basis of the record . . . or as a matter of judicial notice, that the exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction." 391 U.S. at 517, 518, 88 S.Ct. at 1774, 1775, 20 L.Ed. 2d at 782. So it is here. *See State v. Silhan*, 302 N.C. 223, 275 S.E. 2d 450 (1981).

The record before us contains the testimony of a witness, Dr. James Luginbuhl, that exclusion of those opposed to the death penalty results in the systematic exclusion of black jurors. Dr. Luginbuhl's testimony consisted of his own observations and the

results of a survey he conducted of 186 persons in New Hanover County prior to this trial. That survey, according to the record, was completed in two days. There is no evidence as to how those surveyed were chosen, or what the make-up of the survey pool was in terms of age, race, education or economic position. As apparently was the case with the trial court, we attach little weight to Dr. Luginbuhl's personal conclusion that blacks are systematically excluded by "death qualification" jury selection.

Under Article 100 of Chapter 15A of the General Statutes of North Carolina, it is intended that the same jury should hear both phases of the trial unless the original jury is "unable to reconvene." G.S. 15A-2000(a)(2); *State v. Cherry*, 298 N.C. 86, 257 S.E. 2d 551 (1979). This assignment is overruled.

V.

[3]  Defendant next assigns as error (assignment of error number 6) the trial court's failure to allow defendant's witness, Dr. Luginbuhl, to testify during the evidentiary hearing on defendant's motion to challenge the composition of the *petit* jury as to his opinion of the prejudices white jurors not opposed to capital punishment would be likely to harbor against a black criminal defendant. We affirm the action of the trial court.

We note at the outset that the witness was never offered as an expert, nor was he qualified as such. By his own testimony, we surmise that he was prepared to offer an opinion on the complex question raised by this assignment based on his personal experience in observing an unspecified number of capital trials and on the survey discussed in Number IV above. Dr. Luginbuhl's testimony was quite clearly his own opinion, and thus admissible only if he was qualified as an expert witness by the trial court. The competency of a witness to testify as an expert is a question addressed to the discretion of the trial court and is thus not disturbed on appeal unless there is an abuse of that discretion. *Utilities Commission v. Telephone Co.*, 281 N.C. 318, 189 S.E. 2d 705 (1972). We find no error in the exclusion of that testimony because of the failure of the party proffering the witness to qualify him as an expert. *See State v. Peterson*, 225 N.C. 540, 35 S.E. 2d 645 (1945), *overruled on other grounds* in *State v. Hill*, 236 N.C. 704, 73 S.E. 2d 894 (1953).

## VI.

[4]  Defendant argues in his assignment of error number 7 that reversible error occurred when the trial court failed to compel the chairman of the New Hanover County Jury Commission to answer for the record how he would explain alleged under-representation of blacks in jury pools in that county. We disagree.

Defendant had earlier offered evidence that, according to the 1970 census, blacks comprised 22.5% of the total population of New Hanover County. Further evidence was offered by defendant to the effect that currently 23.5% of the total population available for jury service in the County was black, but that, despite this, a sample of the jury pool conducted by defendant's witness James M. O'Reilly showed that only 17.3% of the available persons in the jury pool were black.

Mr. C. P. Farrell, Chairman of the New Hanover County Jury Commission, presented evidence for the State that the jury pool was determined by choosing every second name from the voter registration list and every third name from the county tax list. The Chairman further stated that those lists did not indicate the race of the individuals, nor does the Commission make any effort to determine race.

During cross-examination of this witness, the following exchange occurred:

Q. How can you explain the fact that although the population of New Hanover County is made up of 23 percent black people, the jury lists that you have come up with is constituted of only 17 percent black people?

MR. GRANNIS: Objection.

COURT: Sustained.

Exception.

MRS. TALLY: I would like to make an offer of proof.

COURT: The objection is sustained.

Defendant contends the court committed reversible error by sustaining the State's objection and by not allowing defendant to make an offer of proof. We do not agree.

The objection was properly sustained because any answer this witness could have given would have. been based on speculation and conjecture. For the same reason, the trial judge acted within his authority in not allowing defendant to include the testimony in the record because it is clear that the testimony would not have been admissible on any grounds. Such matters are properly left, in the first instance, to the discretion of the trial judge. *See generally* 9 Strong's N.C. Index 3d, Trial § 9. Mr. Farrell had earlier stated that, in his opinion, the jury pool list reflected a fair cross-section of the community. It should be clear then that any statement he might make as to the alleged underrepresentation of blacks could only be based on conjecture. This assignment is overruled.

## VII.

[5] Defendant next assigns as error (assignment number 8) the failure of the trial court to quash the *petit* jury *venire* on the basis of alleged unconstitutional systematic exclusion of blacks. Similar contentions have been before this· Court in *State v. Avery*, 299 N.C. 126, 261 S.E. 2d 803 (1980) and *State v. Price*, 301 N.C. 437, 272 S.E. 2d 103 (1980).

In *Avery*, as here, evidence for the defendant showed that the Mecklenburg County Jury Commission used only voter registration and tax lists in compiling the jury pool. The evidence further showed that blacks constituted roughly 24% of the total population of eligible jurors in Mecklenburg County, while the jury pool reflected black representation of approximately 15%. This Court held that the mere showing of a disparity of 9% in the racial composition of juries did not, in itself, show unconstitutional discrimination, because it did not prove that there was a systematic exclusion of black jurors. "[T]he fact that a particular jury or a series of juries does not statistically reflect the racial composition of the community does not in itself make out an invidious discrimination forbidden by the [Equal Protection] Clause." 299 N.C. at 130, 261 S.E. 2d at 806, *quoting Washington v. Davis*, 426 U.S. 229, 239, 96 S.Ct. 2040, 2047, 48 L.Ed. 2d 597, 607 (1976).

In order for defendant to establish the necessary *prima facie* violation of the sixth amendment's fair cross-section requirement, this Court in *Avery*, relying on *Duren v. Missouri*, 439 U.S. 357,

99 S.Ct. 664, 58 L.Ed. 579 (1979), said that the defendant must show: (1) that the group alleged to be excluded is a distinctive group; (2) that the representation of the group within the *venire* is not fair and reasonable with respect to the number of such persons in the community; (3) that the underrepresentation is due to systematic exclusion in the jury selection process. 299 N.C. at 134, 261 S.E. 2d at 808.

Applying that standard to this case, we first note that the disparity here is only 6.3%, whereas in *Avery* it was 9%. Thus, we cannot say that the proportion of blacks is not fair and reasonable. Furthermore, the testimony of Chairman Farrell clearly shows that the jury pool was compiled as required by G.S. 9-2. As a result, we cannot say that the possible underrepresentation which defendant has shown is the product of systematic discrimination. *State v. Price*, 301 N.C. 437, 272 S.E. 2d 103 (1980). This assignment of error is overruled.

## VIII.

Defendant's assignment of error number 9, charging error in the trial court's consolidating defendant's several offenses for trial, is also without merit. The record shows that the offenses joined were not "so separate in time and place and so distinct in circumstances as to render the consolidation unjust and prejudicial to defendant." *State v. Johnson*, 280 N.C. 700, 704, 187 S.E. 2d 98, 101 (1972). We find here a sufficient "transactional connection" between the crimes committed by defendant against Mildred Murchison and against Malcolm Biles, because those crimes were clearly part of a single scheme or plan. *State v. Powell*, 297 N.C. 419, 255 S.E. 2d 154 (1979); *see also State v. Parton*, 303 N.C. 55, 277 S.E. 2d 410 (1981); *State v. Bracey*, 303 N.C. 112, 277 S.E. 2d 390 (1981).

## IX.

[6] Defendant next contends by his assignment number 10 that the trial court erred in deferring action on a motion by defendant, made prior to trial and again after the jury returned a verdict of guilty of first degree murder, to compel the State to disclose information relevant to sentencing. This assignment closely follows No. I above; in essence defendant argues that due process required that at the guilt phase he be notified of specific aggravating circumstances upon which the State would rely in seek-

ing the death penalty in the sentencing phase, and further that he be fully advised of all information relevant to the sentencing phase. It is clear that the State is not required to supply such detailed facts in the guilt/innocence phase of the trial. Thus, defendant urges us to hold in effect that defendant's due process right to discover elements of the State's case at the sentencing phase exceeds such due process right at the guilt/innocence phase of trial, where guilt is determined. This we decline to do.

We have already determined, in No. I above, that defendant had appropriate notice of the aggravating circumstances the State would rely on by virtue of their enumeration in 15A-2000(e). Thus defendant's due process right to know the aggravating circumstances which may be used against him is sufficiently safeguarded. *See Spinkellink v. Wainwright,* 578 F. 2d 582 (5th Cir. 1978), *cert. denied* 440 U.S. 976 (1979). Going beyond that, defendant says that the State should be compelled to disclose the evidence underlying the aggravating circumstances, in order for the defendant to prepare a defense.

The record before us shows that the prosecution had fully satisfied defendant's right to discover evidence as outlined in G.S. Chapter 15A, Article 48. In fact, the district attorney informed the court that he had allowed defendant's attorneys to see his "entire file." This file included a copy of defendant's prior criminal record, statements of witnesses and other relevant information. Most important for our purposes, though, is the fact that the substance of the testimony of witnesses offered at the guilt phase was included in that file. Thus, defense counsel was afforded the opportunity, at a time prior to the sentencing hearing, to ascertain the evidence upon which the State would rely. (Record p. 303).

We further note that prior to the sentencing hearing, the district attorney gave specific notice as to which of the aggravating circumstances the State would rely upon (Record p. 302), and then gave an outline of the evidence the State would present (Record p. 305). Any constitutional due process right of discovery, not otherwise conferred by statute, which defendant might have had was satisfied by the district attorney's providing this evidence at the time of trial. *See State v. Hardy,* 293 N.C. 105, 235 S.E. 2d 828 (1977).

## X.

[7]  Defendant's next assignment of error (number 11) involves two separate questions. First, defendant assigns error to the court's denying defendant the right to question jurors as to whether they felt that the death penalty was "the only appropriate punishment" upon a conviction of first degree murder. As a related question, defendant attempted to ask the jurors whether they could consider a sentence of life imprisonment upon conviction of first degree murder.

Defendant sought to ask some seventeen questions of five different jurors, with the intention of showing that those jurors would automatically vote for the death penalty if defendant was found guilty. Representative of the seventeen questions asked are the following:

Q. Mr. Warwick, if the State convinced you beyond a reasonable doubt that the defendant was guilty of premeditated murder and you had returned that verdict guilty, do you think then that you would feel that the death penalty was the only appropriate punishment?

Q. Mr. Warwick, if you had sat on the jury and had returned a verdict of guilty of first degree murder, would you then presume that the penalty should be death?

Q. At the first stage of the trial and because of that you voted guilty for first degree murder, then do you think that you could at that time consider a life sentence or would your feelings about the death penalty be so strong that you couldn't consider a life sentence?

Q. If there was a situation with a robbery and a killing, as you have described, do you think that in that situation that the death penalty would be the appropriate punishment?

Q. What do you feel is the appropriate punishment for someone who deliberately and with premeditation takes the life of another human being?

To begin with, these questions were overly broad and thus improper because, as hypotheticals, they were incomplete. As the district attorney noted, no mention of mitigating or aggravating factors is made. "On the voir dire examination of prospective

jurors, hypothetical questions . . . containing incorrect or inadequate statements of the law are improper and should not be allowed." *State v. Vinson*, 287 N.C. 326, 215 S.E. 2d 60 (1975). Although counsel is allowed wide latitude in examining jurors on *voir dire*, the form of the questions is within the sound discretion of the court. *Id.* at 336, 215 S.E. 2d at 68. We find no abuse of that discretion here.

## XI.

[8] Defendant next charges error in the trial court's excusing for cause fifteen prospective jurors. (Assignment number 12). The jurors were excused after they expressed opposition to the death penalty. A close examination of the record belies defendant's contentions that the responses of the jurors that they could never consider the death penalty were not sufficiently unequivocal. As we stated in *State v. Barfield*, 298 N.C. 306, 259 S.E. 2d 510 (1979):

> A prospective juror is properly excused for cause when his answers on voir dire concerning his attitudes toward the death penalty, although equivocal, show when considered contextually that regardless of the evidence he would not vote to convict the defendant if conviction meant the imposition of the death penalty. (Citations omitted).

*Id.* at 324, 259 S.E. 2d at 526.

There is no merit in this assignment.

## XII.

[9] Defendant next charges that the trial court committed reversible error when, during the *voir dire* of prospective jurors, it gave incomplete instructions to the jury pool concerning their duty should the trial reach the sentencing phase. (Assignment number 14). Specifically, Judge Gavin, in questioning the jury before they were impaneled, after explaining aggravating and mitigating circumstances, stated that should the jury find the aggravating circumstances outweighed the mitigating circumstances, then the jury should vote to impose the death sentence. Omitted at that time was any instruction that the jurors must also determine that the aggravating circumstances are sufficiently substantial to warrant imposition of the death penalty.

We do not find this omission prejudicial. The instructions were given solely so that prospective jurors could be asked if they could impartially consider aggravating and mitigating circumstances and properly apply the law. Defense counsel did not ask for a more complete instruction. More importantly, the record discloses that the jury *was* properly instructed during the sentencing phase. In light of the length of the trial and the fact that, at the appropriate time, correct instructions were given the jury, we find this assignment to be without merit.

## XIII.

By his next five assignments (numbered 15 through 19), defendant questions the refusal of the trial court to excuse five jurors for cause. Defendant sought to excuse each of the five jurors because of bias or because each juror seemed likely to vote for the death penalty if defendant were found guilty of first degree murder. We have carefully reviewed the record and in each instance find no error warranting reversal. The trial judge is vested with broad discretionary powers in determining the competency of jurors, and that discretion will not ordinarily be disturbed on appeal. *State v. Lee,* 292 N.C. 617, 234 S.E. 2d 574 (1977); *State v. Noell,* 284 N.C. 670, 202 S.E. 2d 750 (1974); *State v. Johnson,* 280 N.C. 281, 185 S.E. 2d 698 (1972). These assignments are overruled.

## XIV.

[10] By his assignment of error number 20, defendant challenges the admission into evidence, over defense objections, of the in-court identification of the defendant by State's witnesses Davis, Gerald and Rowland.

Clarence Davis was a witness to the shooting of Mrs. Murchison in the parking lot of the Social Security building where she worked. Paul Gerald was Mrs. Murchison's superior at work. The record clearly shows that both men had an adequate opportunity to observe the defendant either as he approached Mrs. Murchison, as he argued with her, or as defendant drove by in Mrs. Murchison's car after shooting her. Defendant argues that the witnesses did not have sufficient opportunity to observe the defendant, and thus, under *State v. Miller,* 270 N.C. 726, 154 S.E. 2d 902 (1967), the testimony should have been excluded.

This argument is clearly specious when set against the factual record in *Miller*. There this Court found "inherently incredible" identification testimony offered by a witness who did not know the person identified and saw him only briefly, at night, from a distance of 268 feet. In contrast, these witnesses saw the defendant for a much longer time than the witness in *Miller*, and much closer to defendant. Witness Davis saw defendant approach Mrs. Murchison, heard them argue, heard two shots, and then watched as defendant drove past him out of the parking lot, at a distance of about 15 to 20 feet. Davis testified that the weather was fair and the light conditions good. Paul Gerald, looking out of the back door of the Cardinal Building, first saw defendant sitting in the Murchison car, at a distance of about 40 feet. As defendant drove away, the car passed within 5 or 6 feet of where Mr. Gerald was standing. Although Mr. Gerald closed the door of the building as defendant drove by, he testified that he saw the defendant's face for "about 15 or 20 seconds." Any question as to the reliability of this testimony goes to its weight and not its admissibility, since the testimony was clearly admissible. *Cf. State v. Davis*, 297 N.C. 566, 256 S.E. 2d 184 (1979) (witness's identification based on 5-second observation of defendant a few feet away held admissible.) This assignment is overruled.

We likewise find no merit in defendant's contention that witness Roland's identification of defendant was "unreliable." Roland was the taxi driver who picked up defendant and Ms. Bazemore at the Greyhound Bus Station. He testified that the defendant was in his cab for about 15 minutes, and that he observed defendant's face for about 3 minutes. The following day Roland saw a picture of defendant in the Fayetteville newspaper. Based on Roland's *voir dire* examination, the trial court held Roland's identification testimony admissible. As there were sufficient facts to support Judge Gavin's conclusions of law, they are binding on appeal. Accordingly, this assignment is overruled.

## XV.

[11] Defendant argues that testimony by a medical examiner that Mrs. Murchison was pregnant at the time she was shot was inflammatory and prejudicial, and thus should have been excluded. (Assignment number 21). The record shows that similar testimony was earlier elicited from Mr. Murchison without a

defense objection. In this jurisdiction, when evidence is admitted without objection and later admitted over objection, the benefit of the objection is lost. *State v. Logner*, 297 N.C. 539, 256 S.E. 2d 166 (1979); *State v. Grace*, 287 N.C. 243, 213 S.E. 2d 717 (1975); Strong's N.C. Index 3d, Criminal Law § 169.3. So it is here.

## XVI.

[12] On direct examination, Patty Bazemore testified that defendant told her he had previously abducted a white girl and shot at her when she tried to run. Defendant assigns error to the admission of this testimony, saying it was irrelevant and prejudicial. (Assignment number 23). Defendant also assigns as error the admission into evidence of statements made by defendant to police wherein defendant described his kidnapping of Ms. Bazemore. (Assignment number 24). These statements were made to police officers during the course of interviews of defendant by police officers at the Northampton County Jail on the evening of defendant's arrrest.

Simply put, defendant's argument is that the prosecution introduced this evidence solely to show the character of the defendant and to show his propensity to crime. If indeed the evidence was offered solely for that purpose, it would violate the rule in this jurisdiction that the State cannot introduce evidence tending to show that the accused has committed another distinct, independent or separate offense. *E.g., State v. Duncan*, 290 N.C. 741, 228 S.E. 2d 237 (1976); *State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364 (1954).

The State argues that the statements made by defendant concerned a series of acts interwoven one with another so closely that, together, they constitute an overall plan by this defendant to steal cars and to kidnap and rape women. It is the State's contention that under *State v. Taylor*, 301 N.C. 164, 270 S.E. 2d 409 (1980), the statements are therefore admissible. In *State v. Taylor*, the prosecutrix testified about threatening statements made by the defendant to her about crimes he had previously committed. We held the statements were admissible as part of defendant's overall scheme to kidnap and subdue the will of Jewel Taylor.

*State v. Taylor* does not control here because defendant was not on trial for any crimes he may have committed against Ms.

Bazemore. Our determination in an earlier *Taylor* opinion that defendant's statements were admissible as "part of a common scheme or plan" was only made in reference to defendant's plan to kidnap and rape Jewel Taylor. The State cannot, under that language, introduce evidence of a series of crimes allegedly committed by defendant but for which he is not on trial unless such evidence is admissible under one of the exceptions to the general rule that such evidence is not admissible. *State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364 (1954). This evidence does not fit within any of the exceptions. For that reason, we agree with defendant that Patty Bazemore's testimony about statements made to her by defendant about other crimes he had committed and statements made by defendant to police concerning his kidnapping of Ms. Bazemore were improperly admitted.

We do not, however, consider the erroneous admission of this evidence to be prejudicial error. G.S. 15A-1443 provides:

> *Existence and showing of prejudice.* — (a) A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant. Prejudice also exists in any instance in which it is deemed to exist as a matter of law or error is deemed reversible per se.

Given the overwhelming evidence against defendant, it is clear that the error was harmless beyond a reasonable doubt and that defendant has not shown, indeed could not show, "a reasonable possibility that . . . a different result would have been reached at the trial out of which the appeal arises." Accordingly, defendant is not entitled to relief from this error.

## XVII.

By his next assignment (number 25), defendant concedes that certain statements of the defendant made to State's witness Officer Jimmy Cook would be admissible as substantive evidence, yet defendant charges error in their admission solely as corroborative evidence. Defendant contends that admitting as cor-

roborative evidence only evidence which could have been admitted as substantive evidence unfairly bolsters the State's case because corroborative evidence is not received with the same safeguards as substantive evidence. We see no merit in this argument; in fact, it is more logical that the limiting instruction was favorable to defendant.

## XVIII.

[13] Defendant's next assignment of error (number 26) is that the trial court committed prejudicial error in ordering that a written report evaluating the defendant compiled by a State-appointed psychiatrist be released to the District Attorney. The report was given to the prosecution prior to a competency hearing at which the psychiatrist, Dr. Rollins, testified, and after which the court found defendant competent.

Defendant's argument is in two parts. First, defendant argues that G.S. 15A-1002(d), as it appeared at the time of trial, did not authorize the court to order the full report released. G.S. 15A-1002(d) at that time provided in part that "[t]he full report to the court shall be kept under such conditions as are directed by the court, and its contents shall not be revealed except as directed by the court." We find in that language an implicit power vested in the trial court to order the report released.

The second element of defendant's argument is that disclosure of the report violated the confidential relationship of physician-patient. This Court has previously held, in *State v. Mayhand,* 298 N.C. 418, 259 S.E. 2d 231 (1979), that no physician-patient privilege is created between a physician and a criminal defendant examined by the physician for the purpose of passing on defendant's ability to proceed to trial. Furthermore, as Chief Justice Branch explained in *Mayhand,* G.S. 8-53 creates only a limited physician-patient privilege, because a trial judge may compel disclosure and deny defendant the benefit of the privilege if this is necessary "for the proper administration of justice." *Id.* at 429, 259 S.E. 2d at 239.

Defendant's further objection is that, in preparing his report pursuant to an order entered by Judge Canady, Dr. Rollins was instructed by the court to determine whether there were any mitigating circumstances for this defendant and whether defendant could possibly plead insanity. As this inquiry exceeded a sim-

ple evaluation of competency to stand trial, defendant argues that *Mayhand* does not control here, and thus that at least part of Dr. Rollins' report was privileged.

A similar issue was before the Georgia Supreme Court in *Thadd v. State*, 231 Ga. 623, 203 S.E. 2d 230 (1974). There the defendant argued that the doctor in question was a witness for the prosecution, not a witness for the court. Trial transcripts showed, however, that defendant was admitted for psychiatric examination under court order. Given that fact, the Supreme Court of Georgia reaffirmed its holding in *Massey v. State*, 226 Ga. 703, 177 S.E. 2d 79 (1970):

> The psychiatrist appointed by the court for a sanity examination of the defendant may not be regarded as a prosecution witness, but is instead a witness for the court. *Jackson v. State*, 225 Ga. 790, 793, 171 S.E. 2d 501. Hence, the requisite relationship did not exist and it was not error to admit in evidence the psychiatrist's testimony as to statements made to him by the defendant during the course of his examination of the defendant.

*Id.* at 704-05, 177 S.E. 2d at 81.

We agree with that rationale and result. Accordingly, this assignment is overruled.

### XIX.

**[14]** Defendant next assigns error to the trial court's instructions to the jury on the charge of kidnapping. (Assignment number 27). The jury instructions to which defendant objected were as follows:

> [THIRD: *That the defendant removed Malcolm Biles for the purpose of facilitating his, the defendant, Norris Carlton Taylor's commission of a felony and flight after committing a felony.*]

> FOURTH: That the removal was a separate, complete act, independent and apart from a felony.

> So, I charge that if you find from the evidence beyond a reasonable doubt that on or about September 1st, 1978, Norris Carlton Taylor, unlawfully removed and carried Malcolm

Biles from the vicinity of Fayetteville, North Carolina, to the vicinity of Tarboro, North Carolina, and that Malcolm Biles did not consent to that removal and that [*removal was done for the purpose of facilitating the commission of a felony or flight after committing the felony, and that it was a separate, that is that kidnapping was a separate, complete act, independent of and apart from a felony, it would be your duty to return a verdict of guilty of kidnapping.*]

Defendant complains that the charge was erroneous because it did not specify the felony which Taylor was supposed to have committed. Proof of commission of a felony is an essential element under G.S. 14-39. The question is whether the failure of the trial court to specifically name the felony in its charge to the jury constituted prejudicial error warranting vacation of the sentence defendant received for kidnapping.

This question of the proper form of a judge's charge on kidnapping was before this Court in *State v. Taylor*, 301 N.C. 164, 270 S.E. 2d 409 (1980). There we accepted a similar argument by the defendant and awarded a new trial on the kidnapping conviction. In that case, the indictment charged defendant with "unlawfully removing" the prosecutrix, "for the purpose of facilitating the commission of the felony of rape and for the purpose of facilitating the flight of the defendant, Norris Carlton Taylor following the commission of a felony." In charging the jury, the trial judge's language differed significantly from the language of the indictment. The jury was charged that the State had to prove that defendant "unlawfully confined" the prosecutrix or "removed her by force" or "confined or restrained" her "for the purpose of facilitating his flight from apprehension for another crime, or to obtain the use of her vehicle."

In finding that instruction erroneous, Justice Carlton began his analysis by citing *State v. Dammons*, 293 N.C. 263, 237 S.E. 2d 834 (1977), for the proposition that "it is error, generally prejudicial, for the trial judge to permit a jury to convict upon some abstract theory not supported by the bill of indictment." Applying that standard, Justice Carlton found several prejudicial errors in the jury instructions. First, he noted the variance between the language of the bill of indictment, charging defendant with unlawfully "removing" Jewel Taylor, and the trial court's instruc-

tion in terms of the defendant having unlawfully "confined" and "restrained" the prosecuting witness.

Second, while the indictment charged defendant removed Ms. Taylor "for the purpose of facilitating the commission of the felony of rape and for the purpose of facilitating the flight of the defendant . . . following the commission of a felony" the court instructed the jury that defendant would be guilty of kidnapping if, *inter alia,* the jury found that "the defendant confined or restrained Jewel Taylor for the purpose of facilitating his flight from apprehension for another crime, or to obtain the use of her vehicle." The error here was in the trial court's instructing with respect to "another crime" and in referring to "obtain[ing] the use of her vehicle." The former was erroneous because "another crime" is much broader than the statutory requirement that that crime be a felony. The instruction concerning obtaining the use of the vehicle was erroneous because that charge was not mentioned in the bill of indictment.

Third and finally, the trial court in the earlier Taylor case erred in stating "that the removal was a separate and complete act, independent and apart from his obtaining the vehicle or any other criminal act on his part . . . ." As discussed above, reference to "obtain[ing] the vehicle" was misleading; that charge had been dismissed and was not part of the case before the jury.

The error committed by Judge Gavin in this case was his failure to specify the felony which was facilitated or accomplished by the removal or the felony from which defendant Taylor was fleeing. Our inquiry, then, must be whether his failure to so specify resulted in prejudicial error.

It is clearly the rule in this jurisdiction that the trial court should not give instructions which present to the jury possible theories of conviction which are either not supported by the evidence or not charged in the bill of indictment. In *State v. Dammons,* 293 N.C. 263, 237 S.E. 2d 834 (1977), this Court deemed the trial court's instructions erroneous and prejudicial for several reasons and awarded the defendant a new trial. Likewise in *State v. Taylor,* 301 N.C. 164, 270 S.E. 2d 409 (1980), the instructions presented theories of the crime "which were neither supported by the evidence nor charged in the indictment." The instructions also permitted the jury to consider whether defendant removed the

victim for the purpose of sexually assaulting her, a possible theory supported by the evidence but not charged in the indictment. We read *Dammons* and *Taylor* as holding that where the indictment for a crime alleges a theory of the crime, the State is held to proof of that theory and the jury is only allowed to convict on that theory. Prejudicial error occurs when, as in *Taylor* and *Dammons*, the judge's instructions allow the jury to convict upon some abstract theory supported by the evidence but not alleged in the bill of indictment.

Applying that standard to the facts of this case, we are compelled to conclude that the failure of the trial court to instruct on the theories expressed in the bill of indictment was prejudicial error. The indictment charged that defendant kidnapped Biles for the purpose (1) of committing armed robbery and asault on him, and (2) to facilitate his flight after committing the felonies of armed robbery and murder in his crimes against Mrs. Murchison. In charging the jury the trial judge did not specify either purpose expressed in the indictment. We find error in the vagueness of the judge's charge because the jury could have convicted the defendant of kidnapping Biles to facilitate his flight after the armed robbery of *Biles*, a charge not named in the indictment. Because of this possible variance between the indictment and the charge, defendant is entitled to a new trial on the crime of kidnapping.

## XX.

[15] There was no error in the trial court's instructions to the jury concerning the question of intent in the charge of first degree murder. (Assignment number 28). The judge instructed:

> Now, members of the jury, under that statute, premeditation and deliberation are presumed. The fact that you shoot and kill a person while committing the crime of armed robbery is deemed to be murder in the first degree. It does not matter what the intent of the defendant might be under such circumstances. (R p 288).

Nowhere, as defendant claims, did the court say that defendant's intent was "irrelevant." In felony murder cases, the law in this State is that premeditation and deliberation are presumed. *State v. Wright*, 282 N.C. 364, 192 S.E. 2d 818 (1972). The killing

of a human being by a person engaged in the perpetration of an inherently dangerous felony is murder, "whether intentional or otherwise." *State v. Shrader*, 290 N.C. 253, 225 S.E. 2d 522 (1976).

PENALTY PHASE

XXI.

[16]   Defendant next assigns error in the admission of certain testimony offered by the State during its case in chief at the opening of the penalty phase of defendant's trial. (Assignment number 35). Defendant's objections are too numerous to detail here; we will instead address only those we feel necessary to elucidate our holding on this assignment.

Specifically, defendant objects to the State's being allowed to introduce evidence rebutting one mitigating circumstance possibly favorable to the defendant when the defendant never intended to rely on that mitigating circumstance. (Assignment 35). The record shows that the State offered the testimony of several witnesses for the sole purpose of refuting the mitigating circumstance that defendant had "no significant history of prior criminal activity." G.S. 15A-2000(f).

Illustrative of the testimony offered by the State, not for proving any of the aggravating circumstances but rather to disprove a mitigating one, was the testimony of Tina Baker. Ms. Baker testified that on 31 October 1976 she was kidnapped by defendant and another man and that she was raped by defendant at least three times, and beaten and stabbed ten times. The attorney general concedes that this testimony served only to refute G.S. 15A-2000(f).

We agree with defendant that it was error for the trial court to admit such testimony. The proper order for the introduction of evidence of aggravating and mitigating circumstances is that the State first offer evidence of the statutory aggravating factors listed in G.S. 15A-2000(e). Defendant then offers evidence of mitigating circumstances listed in G.S. 15A-2000(f). Only then is the State entitled to offer evidence intended to rebut defendant's proffered mitigating circumstances. *See e.g. State v. Silhan*, 302 N.C. 223, 275 S.E. 2d 450 (1981).

The State contends that if it is not allowed to refute a mitigating circumstance in its case in chief, and defendant does

not offer any evidence of that mitigating circumstance, then, under *State v. Johnson*, 298 N.C. 47, 257 S.E. 2d 597 (1979), the defendant is entitled to a peremptory instruction on any mitigating circumstance which the evidence shows may exist when the evidence is viewed in the light most favorable to defendant. Such is not the case. Although there is language to that effect in *Johnson*, that opinion also nonetheless places the burden of raising and proving a mitigating circumstance on the defendant. If the defendant does not offer any evidence to show the existence of a mitigating circumstance, it is clear *a fortiori* that he does not carry this burden, and thus is not entitled to an instruction on a mitigating circumstance.

We agree with defendant, then, that the admission of testimony offered by the State solely to refute mitigating circumstances upon which defendant might later rely was error. Our inquiry must next be whether that error was prejudicial. We hold that it was not.

Defendant, through seventy-five exceptions grouped under one assignment of error, contends that the admission of this testimony violated his due process rights under the eighth and fourteenth amendments. G.S. 15A-1443(b), the controlling statute, provides as follows:

(b) A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless.

Our careful review of all of the testimony offered and the arguments presented shows that the State has met its burden for two reasons. First, much of the testimony objected to by defendant, in addition to rebutting mitigating circumstances, also was competent as evidence of aggravating circumstances.

For example, the testimony of Jewel Taylor, the prosecuting witness in *State v. Taylor*, 301 N.C. 164, 270 S.E. 2d 409 (1980), decided by this Court last fall, was offered in part to rebut a mitigating circumstance, but it was also admissible to show that "the capital felony [the murder of Mrs. Murchison] was committed for the purpose of avoiding or preventing a lawful arrest . . . ."

G.S. 15A-2000(e)(4). Mrs. Murchison's murder was one in a series of actions by defendant through which he sought to avoid capture.

Second, the jury had before it all of the evidence offered at the guilt/innocence phase as well as the additional evidence presented at the sentencing phase. A review of that evidence shows that the jury had before it a clear record of what must be described as this defendant's unconscionable acts toward so many of his victims. Although we recognize the gravity of the sentence which defendant received, we nonetheless, after much careful consideration of the entire record before us, conclude that such error was harmless beyond a reasonable doubt and hold that defendant is not entitled to a new sentencing hearing, nor should his sentence be reduced. This assignment is overruled.

## XXII.

[17]  Defendant objects to the in-court identification of defendant by witnesses Tina Baker and Robert Rawls as part of their testimony during the penalty phase of the trial. (Assignment number 36). Apparently defendant argues that the State did not disclose information concerning the procedures used when these witnesses made an out-of-court identification, and thus defendant was unable to refute their testimony.

This assignment is without merit. Before the court received the testimony of the two witnesses a *voir dire* was held. Defendant had every opportunity to test the credibility of the witnesses at that point or to call as witnesses the investigating officers. Failure of the defendant to do so cannot now be a grounds for reversal. In any event, the trial court concluded that the identification of defendant by each of these witnesses was based upon seeing the defendant on the night of the offenses committed against the witnesses, not upon any pretrial or in-court identification. Such findings are supported by competent evidence and therefore binding on appeal. *State v. Brower*, 289 N.C. 644, 224 S.E. 2d 551 (1976); *State v. Curry*, 288 N.C. 660, 220 S.E. 2d 545 (1975).

## XXIII.

[18]  Also received into evidence at the penalty phase of this trial was testimony by William F. Parks, an investigator for the Virginia Beach Police Department, concerning defendant's convic-

tion for the crime of rape. Defendant was convicted in Virginia in 1969 and sentenced to ten years in prison. Defendant complains that testimony about the sentence he received was improperly admitted. (Assignment Number 40).

The State contends that this evidence is admissible to support the aggravating circumstance that "defendant had been previously convicted of a felony involving the use or threat of violence to the person." G.S. 15A-2000(e)(3). We agree. The testimony concerning defendant's sentence would be relevant to show he had been convicted of what would be considered a felony in North Carolina. Nothing else appearing, rape involves the use or threat of violence to the person. We find no error here.

## XXIV.

[19]  Defendant next objects to the testimony of John D. Butts, a forensic pathologist who performed an autopsy on Kathi King. (Assignment number 41). Defendant was charged with the 3 January 1978 murder of Ms. King and convicted in October of 1978. Our review of that conviction appears at 298 N.C. 405, 259 S.E. 2d 502 (1979). Defendant stipulated that he had been found guilty of that murder.

The objection made by defendant is that, as he had stipulated the fact of his prior conviction, the State should not have been allowed to introduce testimony concerning the murder. The State argues that when proving as an aggravating circumstance that defendant was previously convicted of a capital felony or of a felony involving the use or threat of violence to the person (G.S. 15A-2000(e)(2) and (3)), the State should not be limited to admission of the court record of conviction.

We think the better rule here is to allow both sides to introduce evidence in support of aggravating and mitigating circumstances which have been admitted into evidence by stipulation. If the capital felony of which defendant has previously been convicted was a particularly shocking or heinous crime, the jury should be so informed. Conversely, it could be to defendant's advantage that he be allowed to offer additional evidence in support of possible mitigating circumstances, instead of being bound by the State's stipulation.

In *Elledge v. State*, 346 So. 2d 998 (Fla. 1977), the Supreme Court of Florida addressed the same question. There, as here, appellant's counsel stipulated to the admissibility of a prior conviction of defendant for murder. At the sentencing hearing, the widow of the victim was nonetheless allowed to testify in detail about events surrounding the crime. In deeming the testimony properly admitted, the court said:

> This is so because we believe the purpose for considering aggravating and mitigating circumstances is to engage in a character analysis of the defendant to ascertain whether the ultimate penalty is called for in his or her particular case. Propensity to commit violent crimes surely must be a valid consideration for the jury and the judge. It is matter that can contribute to decisions as to sentence which will lead to uniform treatment and help eliminate 'total arbitrariness and capriciousness in [the] imposition' of the death penalty. (Citation omitted).

*Id.* at 1001.

This assignment is overruled.

## XXV.

[20] By his assignment of error number 45, defendant charges error in the scope of the prosecutor's cross-examination of defendant's witness Marzella Motley. Ms. Motley is defendant's sister, and defendant claims that she was called as a character witness for defendant. As she was a character witness, says defendant, questions asked of her by the district attorney concerning particular acts of misconduct by defendant and questions about her possible bias were improper.

The testimony of Ms. Motley on direct examination was not confined to the issue of character. Under the law in this jurisdiction, character can be proved by the opinion of one who knows the defendant, by reputation or by specific acts. 1 Stansbury's N.C. Evidence (Brandis Rev. 1973) § 110. None of these methods were used in eliciting testimony from the witness. Instead, the witness, on direct examination, testified about defendant's troubled youth, his being sent to a reform school, his marriage and his children. Such wide-ranging testimony, we think, moved her testimony beyond the bounds of merely being a character

witness. The expanded breadth of her testimony, under our adversary system, brings with it a concomitant expansion of the scope of permissible cross-examination. Accordingly, this assignment is overruled.

## XXVI.

[21] Defendant assigns as error (assignment number 47) the court's permitting the district attorney to cross-examine defendant's psychiatrist using a report about defendant's competency to stand trial made by a second psychiatrist. The second psychiatrist, Dr. Rollins, was not called at trial, but the State nonetheless used his psychiatric evaluation of defendant to cross-examine defendant's witness Dr. Fisscher.

We agree with defendant that this procedure was improper for the simple reason that it allowed the State to get Dr. Rollins's testimony before the jury at the same time it cross-examined Dr. Fisscher. We do not find reversible error, however, because on redirect examination the defendant asked his witness questions concerning the same report, that is, the one prepared by Dr. Rollins. Thus the improper admission of the testimony was cured when substantially the same evidence was later admitted. *See State v. Covington,* 290 N.C. 313, 226 S.E. 2d 629 (1976); *State v. Little,* 278 N.C. 484, 180 S.E. 2d 17 (1971); *State v. Owens,* 277 N.C. 697, 178 S.E. 2d 442 (1971). This assignment is overruled.

## XXVII.

[22] Defendant next assigns error to certain of the questions asked by the State on cross-examination of defendant's witness Nathan Rice, the Deputy Warden at Central Prison. (Assignment number 49.) On direct examination, Mr. Rice testified about the various security procedures used to manage the prisoners in Central Prison, and the fact that, if a maximum security prisoner injured or threatened another person in the prison, he would be placed in intensive management—a security level more restrictive than maximum security. Mr. Rice also testified that between defendant's initial confinement in Central Prison and the time of trial, defendant had committed no infractions of prison rules.

On cross-examination, the following colloquy occurred:

Q. Now, even within—well, let me just ask you this. Insofar as I and J blocks are concerned, would it be fair for this

jury to believe that you all have done everything to maximize security with regard to those few inmates there that you possible [sic] can in light of the twentieth century technology that we have today?

MRS. TALLY: Objection, to the form of the question.

THE COURT: Overruled.

EXCEPTION.

THIS CONSTITUTES DEFENDANT'S EXCEPTION NO. 231

A. I certainly think so, seeing that we have put close [sic] circuit T.V., monitoring system, placed inmates in individual cells, etc., I think that we have done basically everything that we can to maintain some control over these people.

Q. And even with all of these efforts that you have made with regard to I and J block, you still have instances within I and J block, do you not, in which murders occur, do you not?

MRS. TALLY: Objection, on the grounds of relevancy.

THE COURT: Overruled.

EXCEPTION.

THIS CONSTITUTES DEFENDANT'S EXCEPTION NO. 232

A. The last murder we had occurred on a recreational field of I and J.

Q. And that was a man named Cordell Spaulding, who was located in I and J block who had a weapon and killed an inmate even after he's gone through all the security that you've described, did it not?

MRS. TALLY: Objection, on the grounds of relevancy.

THE COURT: Overruled.

EXCEPTION.

THIS CONSTITUTES DEFENDANT'S EXCEPTION NO. 233

A. That is correct.

Q. Can you tell the jury what happened in that instance?

MRS. TALLY: Objection on the grounds of relevancy.

THE COURT: Overruled.

EXCEPTION.

THIS CONSTITUTES DEFENDANT'S EXCEPTION NO. 234

A. The population on that particular corridor had been turned out to recreate, that being the third tier. They had to come off of the third tier and go down the second tier into a sallyport where he would be given his clothes to put on and then the officer standing by would pull a lever and open the door and, of course, let him out on recreation. In this particular case, all of the people had gone out and been searched and the guy in question was the last one to go out. After he got his clothes on and got ready to exit the door and the lever had been pulled and the door had been opened, he, being a rather large individual, put his foot against the door and jammed it long enough for another inmate in the block to throw a weapon to him and in spite of the yelling and hollering and spraying mace and so forth to try to get him to stop, he went outside and stabbed another prisoner to death in the recreation field.

Q. How many other people had that man killed in the prison system?

MRS. TALLY: Objection on the grounds of relevancy.

THE COURT: Overruled.

EXCEPTION.

THIS CONSTITUTES DEFENDANT'S EXCEPTION NO. 235

A. That's the second one he's been convicted of.

Defendant charges error in the admission of that line of questioning.

Apparently defendant offered the testimony of Mr. Rice, in part, to assure the jury that, should they recommend a sentence of life, defendant would not be able to harm any of his fellow inmates. The State's cross-examination, using the example of Mr. Spaulding, was designed to refute this contention. While we agree with defendant that the State was allowed to go far in placing before the jury irrelevant evidence of an unrelated crime, we

nonetheless cannot find this to be error prejudicial to defendant. The questions excepted to by defendant's exceptions numbered 231 and 232 appearing in the foregoing quotation were clearly competent and within the scope of permissible cross-examination. Given that, we cannot say that the trial judge's rulings on the succeeding exceptions rise to the level of prejudicial error.

## XXVIII.

[23] Assignment of error number 50 presents the question of whether the trial court erred in excluding testimony by defense witnesses on the religious, ethical, legal and public policy perspectives of capital punishment. Various witnesses would have testified that capital punishment does not deter crime, that capital punishment is contrary to the Scriptures and general religious principles, and that capital punishment is imposed in a racially discriminatory and inconsistent fashion. We hold that the trial court acted properly in excluding the testimony.

This issue has previously been before us. In *State v. Cherry,* 298 N.C. 86, 257 S.E. 2d 551 (1979), defendant offered similar evidence: affidavits saying that innocent people were sometimes executed, that capital punishment did not deter crime, and that capital punishment was objectionable on religious grounds. In *Cherry,* we rejected defendant's contentions that G.S. 15A-2000(a)(3) in effect altered the usual rules of evidence or impaired the trial judge's power to rule on the *admissibility* of evidence. Instead, we made it clear in *Cherry* that factors to be considered in sentencing are "the *defendant's* age, character, education, environment, habits, mentality, propensities and record." (Emphasis in original). *Id.* at 98, 257 S.E. 2d at 559.

Beyond that, evidence such as that offered in *Cherry* and here is totally irrelevant and of no probative value as mitigating evidence in the sentencing phase of defendant's trial. We recognize that G.S. 15A-2000(f) states that the statutory list of mitigating factors is not exclusive, but that does not give defendant *carte blanche* to offer evidence having no direct connection with *this* defendant. Any evidence allegedly probative on the issue of mitigating factors must also be, in the view of the court, relevant. Evidence such as that offered here is not. This assignment is overruled.

## XXIX.

Nor was there error in the trial court's refusing to submit a specific verdict form to the jury as proposed by the defendant. (Assignment number 52). To begin with, defendant's proposed form did not expressly mention the possible mitigating circumstances, which we said in *State v. Johnson*, 298 N.C. 47, 257 S.E. 2d 597 (1979), would be the preferred practice.

Second, we find no merit in defendant's contention that since the jury had to answer each aggravating circumstance specifically but did not have to answer which mitigating circumstances they found, that placed undue emphasis on the aggravating circumstances. The judge's instructions made clear to the jury the proper method for weighing the aggravating and mitigating circumstances in reaching its verdict. We presume the jury followed those instructions. This assignment is overruled.

## XXX.

[24] Defendant's conviction of first degree murder at this trial was based upon the felony murder rule. The underlying felony was the robbery of Mrs. Murchison. One of three aggravating circumstances submitted to the jury was as follows: Was this murder committed while Norris Carlton Taylor was engaged in the commission of the felony of robbery? The jury replied in the affirmative. Defendant assigns as prejudicial error the submission of this aggravating circumstance. (Assignment number 53).

We agree with defendant that the trial court erred in submitting this aggravating circumstance. As we said in *State v. Cherry*, 298 N.C. 86, 257 S.E. 2d 551 (1979), "when a defendant is convicted of first degree murder under the felony murder rule, the trial judge shall not submit to the jury at the sentencing phase of the trial the aggravating circumstance concerning the underlying felony." *Id.* at 113, 257 S.E. 2d at 568. However, nothing in Cherry or any of our other decisions states that such an error is prejudicial *per se.* Our next inquiry, then, is whether the error here was prejudicial.

In assessing whether the erroneous submission of this aggravating circumstance was harmless error, this Court has previously stated that the proper test is whether there is a *reasonable possibility* that the evidence complained of might have

contributed to the imposition of the death penalty. *State v. Goodman*, 298 N.C. 1, 257 S.E. 2d 569 (1979). In *Goodman*, we found submission of the underlying felony to be error largely because of the highly questionable quality and credibility of the State's primary evidence. We found similar prejudicial error in *State v. Cherry*, 298 N.C. 86, 257 S.E. 2d 551 (1979) simply because we were unable to say that under the facts of that particular case the submission of the underlying felony constituted harmless error. In *Cherry*, absent the erroneously submitted aggravating circumstances, we could not say that the jury would have decided that the aggravating circumstances were "sufficiently substantial to call for imposition of the death penalty." 298 N.C. at 114, 257 S.E. 2d at 568.

Contrasting those two decisions with the case before us, we note at the outset that the State offered overwhelming and conclusive proof that the defendant committed all of the crimes with which he was charged. Several eyewitnesses testified about the robbery and murder of Mrs. Murchison. Malcolm Biles survived his wounding at the hands of defendant and testified about his abduction, robbery and assault. Patty Bazemore, who basically accompanied defendant throughout the course of these events, also testified about events within her personal knowledge. Other witnesses for the State offered additional pieces of information, which when connected, gave the jury a clear and concise account of defendant's actions. As a result, we are not troubled by the quality of the State's evidence as we were in *State v. Goodman*, 298 N.C. 1, 257 S.E. 2d 569 (1979).

Nor do we feel we are unable to say that submission of the underlying felony here was harmless error. In contrast to *Cherry*, we are here convinced that the error was harmless beyond a reasonable doubt and that the result of the weighing process used by the jury would not have been different had the impermissible aggravating circumstance not been present. Our review of the voluminous evidence offered by the State convinces us that submission of the aggravating circumstance that the murder was committed while committing the robbery was not prejudicial error.

Most instructive in reaching this conclusion is a comparison of the record in the sentencing phase in *Cherry* with the record in

this case. In *Cherry*, defendant, in the course of robbing a store, shot and killed an employee of that store. There was some evidence that the victim and defendant struggled over the gun, and the gun discharged, fatally wounding the victim. The jury found defendant guilty of first degree murder.

At the penalty phase of *Cherry's* trial, the State offered as additional evidence of aggravating circumstances *only* the stipulation that defendant had a prior conviction for armed robbery. Defendant offered the testimony of his mother, father, wife and a good friend as evidence of mitigating circumstances. The State offered no rebuttal. The jury found three aggravating circumstances and recommended the death penalty. This Court, fearing that the erroneous submission of the underlying felony as an aggravating circumstance might have tipped the balance in the jury's decision to impose the death penalty, remanded the case for a new sentencing hearing.

In contrast, the record in the case now before us contains extensive testimony offered at the sentencing phase in support of several of the statutory aggravating circumstances. A brief overview of the evidence should demarcate with sufficient clarity the enormous factual qualitative and quantitative differences between the evidence offered in *Cherry* and the evidence offered in this case.

Patricia Ann Sullivan testified that on 30 August 1978 she was kidnapped by defendant at knife point, that she was able to escape from defendant and that he shot her as she ran. The murder of Mrs. Murchison occurred two days later. Ms. Sullivan's testimony was therefore admissible under G.S. 15A-2000(e)(4), because the murder of Mrs. Murchison may have been committed "for the purpose of avoiding . . . a lawful arrest." *Id.* Defendant had for several days prior to the murder been stealing cars and moving about the countryside. Mrs. Murchison's murder was simply one part of defendant's flight to avoid arrest.

In a similar vein, the testimony of Richard Lee Taylor, that he was kidnapped by defendant, was admissible as evidence that the murder of Mrs. Murchison was one chapter in defendant's efforts to avoid capture. Jewel Taylor, the prosecuting witness in an earlier case involving this defendant, was likewise properly allowed to testify about her abduction and mistreatment at the

hands of defendant. The events involving Mrs. Taylor occurred on 28 and 29 August 1978 and included driving the defendant to Petersburg, Virginia. Her testimony was therefore relevant as evidence of defendant's ongoing efforts to avoid capture.

Other testimony, including defendant's admission of other crimes to police officers, was properly offered and received as also supporting the State's theory that the capital felony was committed for the purpose of avoiding a lawful arrest.

In addition to considering the evidence supporting the proffered aggravating circumstances, the jury was of course aware of the evidence offered at the guilt/innocence phase of the trial. Thus, even though the submission of the underlying felony was error, overwhelming evidence supporting other statutory aggravating factors convinces us that the weighing process has not been compromised. *Compare Elledge v. State*, 346 So. 2d 998 (Fla. 1977) with *Brown v. State*, 381 So. 2d 690 (Fla. 1980), *cert. denied* --- U.S. --- , 101 S.Ct. 931, 66 L.Ed. 2d 847 (1981). Accordingly, this assignment is overruled.

### XXXI.

[25] Defendant's assignment of error number 54 alleges error in the trial court's instructing the jury that they could consider as an aggravating circumstance that the murder was committed for pecuniary gain. Defendant argues that since the felony underlying a felony murder conviction cannot be submitted as an aggravating circumstance, instruction on any element of that felony is also precluded. Defendant relies on *State v. Goodman*, 298 N.C. 1, 257 S.E. 2d 569 (1979), for the proposition that the submission of two aggravating circumstances arising from the same act was error.

We need not pause to distinguish defendant's *Goodman* argument, because we have recently resolved this question in *State v. Oliver*, 302 N.C. 28, 274 S.E. 2d 183 (1981). In *Oliver*, in discussing whether pecuniary gain was improperly submitted as an aggravating circumstance, we said:

> Neither is there any error in submitting this circumstance in a felony murder case in which the underlying felony is robbery notwithstanding the rule that the robbery itself cannot be submitted as such a circumstance. The robbery constitutes an essential element of felony murder. In a

capital case tried solely on the felony murder theory a jury, in absence of this element, could not find defendant guilty of the capital offense. (Footnote omitted). The circumstance that the capital felony was committed for pecuniary gain, however, is not such an essential element. This circumstance examines the motive of the defendant rather than his acts. While his motive does not constitute an element of the offense, it is appropriate for it to be considered on the question of his sentence.

*Id.* at 62, 274 S.E. 2d at 204.

This assignment is overruled.

## XXXII.

[26] Assignment of error number 57 is addressed to the trial court's instructions on the mitigating circumstances found in G.S. 15A-2000(f)(2) and (6)—mental or emotional disturbance and impaired capacity of the defendant. On those issues, the court instructed the jury as follows:

Consider whether this murder was committed while Norris Carlton Taylor was under the influence of mental or emotional disturbance.

A defendant is under such influence even if it does not justify or excuse his killing, if he is in any way affected or influenced by a mental or emotional disturbance.

There has been some evidence in this case to the effect that the defendant was suffering from paranoid psychosis. I say to you that that would be a mental disturbance.

The second matter which you should consider under Issue No. 3 is whether or not Norris Carlton Taylor's capacity to conform his conduct to the requirements of the law was impaired.

The defendant's capacity to conform is impaired even if his killing is not justified or excused, and even if he is able to appreciate the criminality of his conduct if he is for any reason less able than a normal person to do what the law requires, or to refrain from what the law forbids. (R p 468).

Relying in large part on the decision of this Court in *State v. Johnson*, 298 N.C. 47, 257 S.E. 2d 597 (1979), defendant alleges these instructions were prejudicially inadequate.

Defendant is correct that in *Johnson* we found error in the trial court's cryptic reference to the mitigating circumstances enumerated in G.S. 15A-2000(f)(6). But that holding does not control the result here. To begin with, defendant in *Johnson* pleaded guilty to first degree murder. Furthermore, defendant did not have a defense of insanity under the laws of this State, but there was abundant evidence of defendant's schizophrenia. As defendant could not rely on a defense of insanity in the guilt phase of the trial, because he was not insane under the M'Naghten test, defendant relied heavily on the mitigating circumstances of G.S. 15A-2000(f)(6) to convince the jury that he should be sentenced to life imprisonment rather than death. On that state of the record, then, we said it was "fair to say that this mitigating circumstance was almost 'the whole case' so far as defendant was concerned on the question of punishment." *Id.* at 69, 257 S.E. 2d at 614. Given that, and the complexity of the psychiatric evidence offered by defendant, we could only conclude in *Johnson* that defendant was entitled to a fuller instruction on that issue.

Based on our examination of the record now before us, we conclude that the trial judge's instructions were sufficient to explain the law arising on the evidence. Defendant's expert psychiatric testimony established that defendant did know right from wrong, but that defendant was under the influence of a mental or emotional disturbance at the time of the offense, and that defendant suffered from impaired capacity to conform his conduct to the requirements of the law at the time of the offense. As in *Goodman*, we find this instruction sufficient on the facts of this case. The jury was instructed that, in order to find a mitigating circumstance, they must find by a preponderance of the evidence that defendant was "in any way affected or influenced by a mental or emotional disturbance." The jury could find a second mitigating circumstance if it determined that the defendant "was for any reason less able than a normal person to do what the law requires or to refrain from what the law forbids." Those instructions were sufficient on the evidence offered. This assignment is overruled.

State v. Taylor

## XXXIII.

Defendant offers numerous other assignments, most of which have either previously been answered by this Court or are spurious at best. They are dismissed without discussion.[2]

In order to be certain that the death penalty is not imposed randomly or capriciously, this Court is directed by statute to review the record in a capital case to determine whether the record supports the jury's finding of any aggravating circumstance, whether the sentence was imposed under the influence of passion, prejudice or any other arbitrary factor, and whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. G.S. 15A-2000(d); *see State v. Martin,* --- N.C. --- , 278 S.E. 2d 214 (1981); *State v. McDowell,* 301 N.C. 279, 271 S.E. 2d 286 (1980); *State v. Barfield,* 298 N.C. 306, 259 S.E. 2d 510 (1979).

We have carefully reviewed a record of approximately five hundred pages, briefs totaling over three hundred eighty pages, and the defendant's sixty-two assignments of error. After full and cautious deliberation, we conclude that there is sufficient evidence in the record to support the findings of the jury and its determination of sentence based thereon. There is nothing in the record to indicate that the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor.

While the jury can consider all evidence properly presented to it at trial in reaching a determination as to punishment, (G.S. 15A-2000(a)(3) ), that evidence can only be considered insofar as it supports a finding of an aggravating circumstance. G.S. 15A-2000(c). Here the jury had before it clear evidence that defendant had been previously convicted of a felony involving the use or threat of violence to the person. The jury also properly determined that the murder was committed for pecuniary gain.

2. All assignments of error brought forward by defendant have been carefully scrutinized by this Court. We elect not to discuss many of them because they involve questions of law well-settled by our earlier opinions, are merely formal objections, or else are so clearly meritless that we see no point in cluttering the pages of our reports with a recitation of their content. Accordingly, the following assignments of error are dismissed, after thorough review, without discussion: 13, 22, 29, 30, 31, 32, 34, 37, 38, 39, 42, 43, 44, 46, 48, 51, 55, 56, 58, 59, 60, 61, 62.

Given those facts, and that the murder of Mrs. Murchison was, simply put, a cold-blooded killing of an innocent woman on her way to work, we see no reason to reverse the judgment of the jury. The sentence of death is not excessive or disproportionate, considering both the crime and the defendant. We, therefore, decline to exercise our authority to set aside the sentence imposed.

For the reasons stated above, we hold that defendant is entitled to a new trial on the kidnapping charge. In all other respects, defendant had a fair trial, free from prejudicial error. In the convictions of first degree murder, armed robbery and assault with a deadly weapon inflicting serious bodily injury, we find no error.

Case No. 79 CRS 6425, First degree murder, no error.

Case No. 79 CRS 6426, Aggravated kidnapping, armed robbery, assault with a deadly weapon with intent to kill inflicting serious bodily injury, reversed and remanded in part for a new trial on the kidnapping charge only — no error otherwise.

Justice EXUM concurring in part and dissenting in part.

I concur in the result reached by the majority on the guilt phase of this case.

I am unable to join, however, in the majority's conclusion that the cumulative effect of the several errors acknowledged by the majority to have been committed in the sentencing phase was not prejudicial. In face of these errors and with his life hanging in the balance, defendant is entitled to a new sentencing hearing.

Also, for the reasons stated in my dissent in *State v. Rook*, 304 N.C. 201, 283 S.E. 2d 732 (1981), I believe it to be prejudicial error not to require the jury to specify those mitigating circumstances which it finds to exist. For this additional reason defendant is entitled to a new sentencing hearing.

My vote, therefore, is to remand the case for a new sentencing hearing.