STATE OF NORTH CAROLINA v. HOWARD A. HEADEN

No. 51

(Filed 14 July 1978)

**Criminal Law § 66.17— identification of defendant at courthouse—impermissibly suggestive—in-court identification not of independent origin**

A pretrial identification of defendant by a deputy sheriff at the courthouse when both were there on unrelated business was impermissibly and unnecessarily suggestive where the deputy had previously been told defendant's name, had seen his picture and learned that he was a participant in the crime and where the deputy tentatively identified defendant and had his suspicions confirmed by another officer of the sheriff's department; such impermissibly suggestive pretrial identification procedure gave rise to a substantial likelihood of irreparable misidentification where the deputy testified that it was dark when he identified defendant at the crime scene, he paid little attention to defendant's features as his main concern was getting defendant into his patrol car, he was unable to identify a photograph of defendant and could give only a general description of the person he arrested, he was not sure of defendant's identity upon viewing him at the courthouse even though he had been shown a photograph of defendant, and the deputy did not actually identify defendant until he tentatively did so two years after the commission of the crime charged.

APPEAL by defendant pursuant to G.S. 7A-30(1) from *Godwin, J.,* at the 14 March 1977 Criminal Session of CUMBERLAND Superior Court.

Defendant was tried and convicted of felonious breaking and entering, felonious larceny, and the misdemeanor of forcibly breaking and entering into coin-operated machines. He was sentenced to ten years in prison on the consolidated charges of breaking and entering and larceny and two years for breaking and entering coin-operated machines, these sentences to run consecutively.

Defendant appealed to the Court of Appeals and that court found no error in the trial. He appealed to this Court pursuant to G.S. 7A-30(1).

The evidence for the State tends to show that on the early morning of 27 January 1974 two white males broke into the Foosball Arcade in Summerhill Plaza shopping center, Cumberland County, and pried open several coin-operated concession machines in an attempt to take the coins contained therein. Deputy Sheriff E. E. Wiggs was on patrol that night and arrived on the scene at approximately 3:25 a.m. Noticing that the rear door of the Arcade was ajar, he entered the dimly lit establishment and apprehended the two men. Wiggs handcuffed one of the men, grabbed the other by the belt, and had the men walk out the back door in front of him. On arriving at the patrol car the deputy reached to unlock the car door, at which time the handcuffed male bolted and ran. Wiggs turned to run after him, and as he did the other individual likewise broke from him and escaped. Efforts made to recapture the two men failed. At trial Deputy Wiggs identified the defendant as one of the men he had apprehended at the Arcade on the early morning of 27 January 1974.

Arlen George testified that he was one of the men who broke into and attempted to rob the Foosball Arcade on 27 January 1974. He testified that the defendant had accompanied him, and that they both were captured by and escaped from Deputy Wiggs. George admitted on cross-examination that he was in prison for several breaking and entering convictions, and that he had been promised immunity from prosecution for the present offense in exchange for his testimony against the defendant.

The defendant offered no evidence. Other testimony relevant to the decision will be set forth in the opinion.

*Attorney General Rufus L. Edmisten and Assistant Attorney General James E. Scarbrough for the State.*

*Nance, Collier, Singleton, Kirkman & Herndon by James D. Little and James R. Nance, Jr. for defendant appellant.*

MOORE, Justice.

Defendant's sole assignment of error is to the admission, over his objection, of the in-court identification testimony of the witness Deputy Sheriff Wiggs. Defendant argues that this testimony was tainted by pretrial identification procedures which were so impermissibly suggestive and unnecessary as to be conducive to a mistaken identification, and that the admission of evidence regarding this pretrial identification, as well as the in-court identification itself, was a violation of due process.

It is well established that the primary illegality of an out-of-court identification will render inadmissible the in-court identification unless it is first determined that the in-court identification is of an independent origin. *See State v. Henderson,* 285 N.C. 1, 203 S.E. 2d 10 (1974), and cases cited therein. Defendant's assignment of error presents, therefore, two questions. The first concerns the legality of the pretrial identification procedures, *viz.,* whether an impermissibly suggestive procedure was used in obtaining the out-of-court identification. If this question is answered negatively, our inquiry is at an end. *Cf. State v. Long,* 293 N.C. 286, 237 S.E. 2d 728 (1977). If answered affirmatively, the second inquiry is whether, under all the circumstances, that suggestive procedure gave rise to a substantial likelihood of irreparable misidentification. *Manson v. Brathwaite,* 432 U.S. 98, 53 L.Ed. 2d 140, 97 S.Ct. 2243 (1977); *Neil v. Biggers,* 409 U.S. 188, 34 L.Ed. 2d 401, 93 S.Ct. 375 (1972); *State v. Henderson, surpa.*

As a general rule evidence unconstitutionally obtained is excluded in both state and federal courts as essential to due process — not as a rule of evidence but as a matter of constitutional law. *Mapp v. Ohio,* 367 U.S. 643, 6 L.Ed. 2d 1081, 81 S.Ct. 1684 (1961); *State v. Rogers,* 275 N.C. 411, 168 S.E. 2d 345 (1969); *State v. Colson,* 274 N.C. 295, 163 S.E. 2d 376 (1968). However, as ap-

plied to unnecessarily suggestive identification procedures, this principle does not require a strict exclusionary rule. *See Manson v. Brathwaite, supra.* Instead, as the United States Supreme Court said in *Neil v. Biggers, supra,* the test for the admission or exclusion of such evidence is "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive.... ." 409 U.S. at 199, 34 L.Ed. 2d at 411. As stated in *Manson v. Brathwaite, supra,* "[T]he admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability. . . ." 53 L.Ed. 2d at 149.

The first question then is whether the pretrial identification procedure was unnecessarily or impermissibly suggestive. The facts of the pretrial identification are as follows: The alleged crimes were committed on 27 January 1974. Twenty months later, on 23 September 1975, Sgt. Jerome Levee, of the Cumberland County Sheriff's Department, showed Deputy Wiggs some four-teen photographs and asked him to look through them and see if he could identify any of them as one or both of the men he apprehended at the Arcade on 27 January 1974. From these photographs Wiggs identified State's witness Arlen George. He could not, however, identify defendant's photograph at that time. After Wiggs had failed to identify defendant's photograph, Sgt. Levee mentioned defendant's name and told Wiggs that the defendant was a participant. The photograph of the defendant shown to Wiggs had the name "Howard Headen" inscribed on the back, and at some time during the identification procedure Deputy Wiggs, for an unexplained reason, put his own initials and the date on the back of the photograph just under defendant's name.

Several months later, in the spring of 1976, Deputy Wiggs was at the courthouse on unrelated business, and at that time thought he saw the man he apprehended at the Arcade. At trial Wiggs testified:

> "When I saw him in the courthouse I heard his name but I was not sure that was him. I told Sgt. Levee this. I believe Sgt. Levee was in the courthouse the same day. I don't believe he was right here in the courthouse at that time.

Later on I saw him (Headen) again and Sgt. Levee was here and said, 'Yes, that is Alan Headen.' "

Wiggs further testified that he had some doubt as to the identity of the defendant, but that after he had talked with Sgt. Levee he was sure that the defendant was the man involved in the crimes.

Though this Court has held that an unarranged pretrial courtroom identification is not in itself, nothing else showing, an impermissibly suggestive identification procedure, *see State v. Long, supra*, the facts of this particular pretrial identification do indicate unnecessary and impermissible suggestiveness. It is not the fact that Wiggs identified the defendant in the courthouse while both were there on unrelated business that is impermissible or unnecessary; rather, it is what transpired between Officers Wiggs and Levee prior to and after Wiggs first saw the defendant in the courthouse that is both unnecessarily and impermissibly suggestive. The fact that Deputy Wiggs knew defendant's name, had seen his picture and learned that he was a participant, plus the fact that, on tentatively identifying defendant, Sgt. Levee confirmed Wiggs' suspicions regarding defendant, are specifics which, when combined, indicate conditions of impermissible suggestiveness. We believe and therefore hold that the totality of the circumstances leading up to the pretrial identification points toward procedures which are impermissibly and unnecessarily suggestive.

Given that the procedure was impermissibly suggestive, the second question to be dealt with is whether the suggestive procedure itself gives rise to a substantial likelihood of irreparable misidentification. *Neil v. Biggers, supra; Simmons v. United States*, 390 U.S. 377, 19 L.Ed. 2d 1247, 88 S.Ct. 967 (1968). The central question then is whether, under the totality of the circumstances, the identification of defendant at trial was reliable and of independent origin even though the earlier confrontation procedure was suggestive. *See Manson v. Brathwaite, supra; Neil v. Biggers, supra; State v. Henderson, supra.* As stated by Mr. Justice Blackmun for the United States Supreme Court:

"[R]eliability is the linchpin in determining the admissibility of identification testimony for both pre- and post-Stovall confrontations. The factors to be considered are set

out in *Biggers*. 409 U.S., at 199-200, 34 L.Ed. 2d 401, 93 S.Ct. 375. These include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself." 53 L.Ed. 2d at 154. *See also State v. Henderson, supra.*

We compare then the facts in this case with the factors to be considered as set out in *Neil v. Biggers, supra:*

1. The opportunity to view: Wiggs testified that it was in the dark of night; there was some light in the place but he could not distinguish defendant's features. He could tell that he was a white male, but that was all he could tell. If he observed his features it was just momentarily.

2. The degree of attention: Wiggs testified: "I was not particularly looking for distinguishing features on either one of them. My only concern was to get them in the car and I was less concerned with their identification at that particular point in time. I was not particularly trying to pick out any identifying features on either individual at that particular point in time but was mainly concerned with keeping them under observation. I was not really paying too much attention to what their faces looked like or their clothing."

3. The accuracy of the description: Wiggs was unable to identify a photograph of defendant and could only give a general description as follows:

"The individual who I first saw in the foosball place and put the handcuffs on was about 5'9" tall and was a white man. It was dark so I don't know what kind of clothing he had on but I do know that he had on cotton-type gloves. He was slender or medium build and I would say that he was possibly in his late teens, I was not able to observe whether he was clean shaven or had a moustache or beard. He had long hair kind of down below his ears. The hair was a dark color but I could not see whether it was black or dark brown."

State v. Headen

4. The witness's level of certainty: Even after having seen the photograph which was identified by Sgt. Levee as being that of the suspect, when Wiggs first saw defendant in the courthouse he was not sure of defendant's identity until it was confirmed by Sgt. Levee.

5. The time between the crime and the confrontation: The crimes occurred on 27 January 1974. Wiggs was shown the photograph, which he failed to identify, on 23 September 1975, and he did not actually identify defendant until he did so tentatively in the spring of 1976 when defendant was pointed out by Sgt. Levee.

Weighing the facts in this case with the factors to be considered as delineated in *Neil v. Biggers, supra,* we are constrained to hold that Wiggs' testimony fails to meet the test of admissibility. There is some question here as to whether Wiggs' pretrial identification of the defendant was based on what he saw at the time of the robbery, or on events during and subsequent to the photographic lineup. We conclude, therefore, that under all the circumstances, the impermissibly suggestive pretrial identification procedures gave rise to a substantial likelihood of irreparable misidentification, and that defendant's objection to all identification testimony by Deputy Wiggs should have been sustained.

Under the standard for assessment of constitutional error set forth in *Chapman v. California,* 386 U.S. 18, 17 L.Ed. 2d 705, 87 S.Ct. 824 (1967), we hold that the error was prejudicial, and that the defendant is entitled to a new trial. It is so ordered.

New trial.