STATE OF NORTH CAROLINA v. JACK HARVEY DAVIS

No. 66

(Filed 12 July 1979)

1. **Criminal Law §§ 66.6, 67.1 — lineup — voice identification — no suggestive procedures**

Identification procedures involving defendant were not rendered impermissibly suggestive because (1) all participants in a lineup were taller than the height given by the homicide victim's wife in her original description of the intruder to police, since defendant himself was not the shortest man in the lineup; (2) defendant was both the fifth man in a lineup and the fifth man to speak in a voice identification procedure, since the victim's widow did not see

State v. Davis

the participants as they spoke and did not know in what order they were speaking; and (3) the identifying witness was told that there was a suspect in the lineup, since the record was not clear as to whether the witness was actually told this or merely assumed it, and a confirmation of the witness's assumption would not indicate to the witness which of the participants the suspect was.

2. **Criminal Law § 66.1— identification of defendant—opportunity for observation—testimony not inherently incredible**

Identification testimony by a witness who had an opportunity to see defendant within a few feet of her in broad daylight for approximately five seconds was not inherently incredible.

3. **Homicide § 20.1— photographs of victim—admissibility**

The trial court in a homicide prosecution did not err in admitting into evidence two photographs of the victim's body which accurately depicted the scene of the crime, since the photographs were properly authenticated, were used by witnesses to explain and illustrate their testimony, were not excessive in number, and were not so used as to unduly arouse the passions of the jury.

4. **Criminal Law § 55.1; Homicide § 20— cigarette butts in victim's home—admissibility**

The trial court in a homicide prosecution did not err in admitting into evidence several partially burned Winston cigarette butts found in the victim's home after the murder since the evidence tended to show that the victim and his wife did not smoke cigarettes; there had been no cigarette butt on the laundry room floor of the victim's home before defendant and his companion entered the home; the victim's wife saw defendant smoking during the day while she was held captive; saliva tests showed that the cigarettes were smoked by a Group O secretor; and blood tests on defendant showed that he was a Group O secretor.

5. **Criminal Law § 113.1— jury instructions—inconsistencies of State's evidence—instruction required**

Defendant could not complain of the trial court's failure in its statement of the contentions of the parties to detail fully the inconsistencies in the State's evidence brought out on cross-examination, since defendant failed to request that a more detailed statement of the contentions be made.

Justices BRITT and BROCK did not participate in the consideration or decision of this case.

BEFORE *Judge Baley* at the 3 April 1978 Criminal Session of ROWAN Superior Court and on a bill of indictment proper in form, defendant was tried and convicted of first degree murder and sentenced to life imprisonment. He appeals pursuant to G.S. 7A-27(a). This case was docketed and argued as No. 64 at the Fall Term 1978.

*Rufus L. Edmisten, Attorney General, by Jane Rankin Thompson, Associate Attorney, for the State.*

*Russell J. Hollers, Attorney for defendant appellant.*

EXUM, Justice.

Defendant's appeal presents four principal questions. They are whether: (1) the trial court properly admitted identification testimony by the deceased's wife; (2) certain photographs should have been excluded because of their inflammatory nature; (3) certain cigarette butts found in the victim's home were properly admitted; and (4) the trial court gave insufficient weight to defendant's contentions in its instructions to the jury. We find no prejudicial error on any of these points.

The state's evidence tended to show that two men broke into the home of Earl Reece White and Mary Alice White in Randolph County about 9:00 a.m. on 25 February 1977. Mrs. White was alone in the house at that time. One of the men grabbed Mrs. White and held her. She was subsequently tied up in the living room. The two men made masks for themselves from torn strips of sheets belonging to Mrs. White. They remained in and around the house from 9:00 a.m. to 5:30 p.m.

Around 2:00 p.m. W. C. Below, a farm employee of Mr. White's, and Sam Hill came to the house on an errand. They were seized by the two men, who were then armed with pistols, and tied up in the living room with Mrs. White. Because of the masks the men had on, Below and Hill were unable to identify them.

Mr. White arrived at his home around 5:00 p.m. The two men tied him up in the living room with the others and asked where his money was. They later took him upstairs. Shortly thereafter, four shots were heard. The two men came downstairs, disconnected the telephone, and told Mrs. White, Below and Hill not to leave for thirty minutes. After the men left, Below and Hill freed themselves and went upstairs, where they found Mr. White. He was lying in a pool of blood with his hands bound behind his back. They checked for a pulse and found none. Mr. White had been shot four times in the head.

Mrs. White told police that she would be able to identify the first man who came into her house, but not the second. She

testified at trial that she was able to observe this man for about five seconds as he first entered the door. She apparently later described him to law enforcement officers as being around five feet seven inches tall, weighing about 140 pounds, in his late twenties, with gray sideburns and a ruddy complexion, and wearing a dark jacket and a camouflage cap.

On 8 March 1977 Mrs. White was shown a group of 18 photographs and was not able to make an identification. On 23 June 1977 she was shown another group of 13 photographs. From this group she picked defendant and one Charles Thomas Ashley as "resembling" the first man who entered her home. There is testimony in the record that the photographs in this group were similar, and there is nothing to indicate any suggestion to Mrs. White as to whom she should pick out.

Mrs. White subsequently attended two lineups. Defendant was in the first, which was held on 8 August 1977. There were a total of seven men in this lineup. All wore camouflage caps. They ranged in height from five feet nine inches to six feet three inches. The youngest man in the lineup was 30 years old. Defendant is apparently about six feet one inch tall and, although his exact age is unclear from the record, at least 35 years old. There was testimony to the effect that all the men in the lineup were similar in description to defendant. Mrs. White stayed in the viewing room for two to five minutes. She then made a visual identification of defendant as the first man to enter her home. There is no evidence of any statement by law enforcement officers as to which man she should pick. Mrs. White did, however, say at one point in her testimony that she was told one of the two men whose photographs she had identified would be in the lineup. Her subsequent testimony undercuts this assertion somewhat, indicating this may have been an assumption on her part rather than something that was actually communicated to her. After making her visual identification, Mrs. White listened to each man in the lineup say, "You are a nice lady and I hate you have to be uncomfortable and I won't hurt you." She identified defendant's voice as that of the first man who entered her house. She neither saw the men in the lineup as they spoke nor knew the order in which they were speaking. Defendant was both the fifth man in the lineup and the fifth to speak.

Charles Thomas Ashley, the other man whose photograph Mrs. White identified as "resembling" the intruder, was in the second lineup she attended. She did not pick Ashley out at that lineup. She did, however, identify another man who apparently had been an inmate at the local jail at the time of the killing. It appears from the record that Mrs. White thought this lineup was for the purpose of identifying the second of the two men to enter her home on 25 February 1977.

At trial Mrs. White unequivocally identified defendant as one of the two intruders. She stated: "I base my identification of him in Court today on seeing his face on the morning of 25 February 1977. I have no doubt in my mind that Jack Harvey Davis was one of the men that came into my house."

Defendant did not object to testimony concerning the photographic identifications. He did object to (1) the admission of testimony as to Mrs. White's visual and voice identifications of defendant at the 8 August 1977 lineup, and (2) her in-court identification of defendant. Upon defendant's initial objection to this testimony the trial court held a voir dire. After hearing evidence from both the state and defendant, the court found facts and concluded that both Mrs. White's lineup and in-court identifications of defendant were admissible. Defendant assigns this ruling and the subsequent admission of this testimony as error.

Two questions are raised by defendant's objection to Mrs. White's in-court identification. The first is whether it was a result of identification procedures so suggestive as to deprive defendant of due process of law; the second, whether her identification was inherently incredible.

"The test under the due process clause as to pretrial identification procedures is whether the totality of the circumstances reveals pretrial procedures so unnecessarily suggestive and conducive to irreparable mistaken identification as to offend fundamental standards of decency, fairness and justice." *State v. Henderson*, 285 N.C. 1, 9, 203 S.E. 2d 10, 16 (1974), *death penalty vacated*, 428 U.S. 902 (1976). This Court follows a two-step process in evaluating such claims of a denial of due process. As we stated in *State v. Headen*, 295 N.C. 437, 439, 245 S.E. 2d 706, 708 (1978):

"The first [question] concerns the legality of the pretrial identification procedures, *viz.*, whether an impermissibly sug-

State v. Davis

gestive procedure was used in obtaining the out-of-court identification. If this question is answered negatively, our inquiry is at an end. If answered affirmatively, the second inquiry is whether, under all the circumstances, that suggestive procedure gave rise to a substantial likelihood of irreparable misidentification." (Citations omitted.)

[1] Defendant points to three examples of what he claims was suggestive behavior on the part of law enforcement officials at the lineup. First, he argues that the lineup itself was suggestive because all the participants in it were taller than the height given by Mrs. White in her original description of the intruders to police. This argument is patently without merit. By the time the lineup was held, defendant was a prime suspect in the case, his photograph having been identified by Mrs. White. He is six feet one inch tall. In order for the lineup *not* to be suggestive at that point, it was necessary to have participants who resembled defendant in physical appearance. The fact that the shortest participant was an inch or two taller than Mrs. White's initial description can in no way be termed suggestive when defendant himself was not the shortest man in the lineup.

Defendant next contends that the voice identification procedures were suggestive because he was both the fifth man in the lineup and the fifth man to speak. The record is clear that Mrs. White neither saw the participants in the lineup as they spoke nor knew in what order they were speaking. While with benefit of hindsight it is possible to construct a theory that Mrs. White surmised that defendant was the man she identified visually because he spoke fifth, the relationship between this theory and any demonstrable facts is too tenuous to use as the basis for finding suggestiveness in the identification process.

Defendant further argues that the procedures used were unduly suggestive because Mrs. White was told there was a suspect in the lineup. As pointed out, the record is not clear as to whether she was actually told this or merely assumed it. Even assuming law enforcement officers made such a statement, we do not think it amounts to impermissible suggestiveness. It is natural for any witness called to view a lineup to assume that the police have a suspect in it. A mere confirmation of this assumption does nothing to indicate to the witness which of the par-

ticipants the suspect is. Standing alone, it does not taint the legality of the lineup. *State v. Davis*, 25 N.C. App. 256, 212 S.E. 2d 680 (1975).

Having found no impermissible suggestiveness in the lineup procedures, we need not discuss further defendant's claim that they resulted in a substantial likelihood of irreparable misidentification. *See State v. Headen, supra*, 295 N.C. 437, 245 S.E. 2d 706.

The question presented by defendant's objections to testimony concerning Mrs. White's visual and voice identifications of him at the 8 August 1977 lineup is whether the procedures employed at the lineup were so suggestive as to result in a very substantial likelihood of misidentification. *Neil v. Biggers*, 409 U.S. 188 (1972); *see also State v. Jackson*, 284 N.C. 321, 200 S.E. 2d 626 (1973) (same standards apply in determining admissibility of voice and visual identifications). As we have shown, there was no suggestiveness in the procedures used that could have led to a misidentification. Testimony concerning Mrs. White's out-of-court identifications was properly admitted.

[2] Even so defendant would have us rule that Mrs. White's identification was inadmissible because it was inherently incredible. Defendant relies on *State v. Miller*, 270 N.C. 726, 731, 154 S.E. 2d 902, 905 (1967), in which this Court held that the probative force of identification testimony is for the jury in all cases except "where the only evidence identifying the defendant as the perpetrator of the offense is inherently incredible because of undisputed facts, clearly established by the State's evidence, as to the physical conditions under which the alleged observation occurred." *Miller* involved a witness who did not know the person he identified and saw him only briefly, at night, and at a distance of 286 feet. Here the evidence showed that Mrs. White had the opportunity to see defendant within a few feet of her in broad daylight for approximately five seconds. While there were a number of factors tending to weaken the probative force of her testimony, it was not inherently incredible within the meaning of *Miller*. The question of her credibility was properly submitted to the jury. Defendant's assignments of error relating to Mrs. White's identification of him are overruled.

[3] Defendant also assigns as error the introduction into evidence of two photographs of the body of Earl Reece White.

These photographs were properly authenticated. They were used by several of the state's witnesses to explain and illustrate their testimony. The trial court instructed the jury that they were to consider the photographs only to the extent they illustrated or explained witnesses' testimony. Under these conditions the photographs were admissible. *State v. Stinson*, 297 N.C. 168, 254 S.E. 2d 23 (1979); *State v. Cutshall*, 278 N.C. 334, 180 S.E. 2d 745 (1971). Defendant argues, nevertheless, that the prejudicial impact of these photographs outweighed any probative value they might have had and they should have been excluded for that reason. This Court has recognized the principle that photographs should be excluded from evidence when they are highly inflammatory and of negligible probative value. *State v. Mercer*, 275 N.C. 108, 165 S.E. 2d 328 (1969). Such is not the case, however, with the two photographs here. They accurately depicted the scene of the crime, they were not excessive in number, and they were not so used as to unduly arouse the passions of the jury. This assignment of error is overruled.

[4] By two of his other assignments of error defendant challenges the admission into evidence of several partially burned Winston cigarette butts. One of the cigarette butts was found on the laundry room floor. The others were found in an ashtray in the living room. " '[A]ny object which has a relevant connection with the case is admissible in evidence, in both civil and criminal trials.' " *State v. Patterson*, 284 N.C. 190, 194, 200 S.E. 2d 16, 19 (1973), *quoting* 1 Stansbury's North Carolina Evidence § 118 (Brandis rev. 1973). Mrs. White testified: (1) she did not smoke Winston cigarettes; (2) her husband did not smoke; (3) there had been no cigarette butt on the laundry room floor before the two men entered her house; and (4) she saw defendant smoking cigarettes during the day while she was held captive. This testimony was sufficient to connect the cigarettes with defendant. They were relevant in that they corroborated Mrs. White's testimony that defendant was one of the intruders. Saliva tests showed that the cigarettes were smoked by a Group O secretor. Blood tests on defendant showed that he is a Group O secretor. This Court has previously held that the results of such blood grouping tests are admissible into evidence. *State v. Gray*, 292 N.C. 270, 233 S.E. 2d 905 (1977). These assignments of error are overruled.

[5] Defendant further assigns as error the trial court's failure in its statement of the contentions of the parties to detail fully the inconsistencies in the state's evidence brought out on cross-examination. The trial court stated the contentions of both parties in general terms. With regard to discrepancies in the state's evidence brought out on cross-examination, he told the jury: "The defendant's evidence tends to show that there are discrepancies in the testimony of the State's witnesses identifying him as one of the perpetrators in this crime which have been disclosed upon cross-examination, and you should have at least a reasonable doubt of his guilt." If defendant felt this statement was inadequate and that a more detailed statement of the inconsistencies was needed, he should have called the matter to the trial court's attention. *State v. Looney,* 294 N.C. 1, 240 S.E. 2d 612 (1978). He did not do so; thus, he cannot now complain. This assignment of error is overruled.

We have examined defendant's other assignments of error and find they do not merit discussion. In the trial there was

No error.

Justices BRITT and BROCK did not participate in the consideration or decision of this case.