STATE OF NORTH CAROLINA v. LARRY EUGENE WALLACE

No. 8426SC105

(Filed 18 December 1984)

1. **Criminal Law § 66.9— identification from photograph of lineup—no impermissible suggestiveness**

    A pretrial identification procedure in which a robbery victim identified the defendant as the robber from a photograph of a lineup was not impermissibly suggestive where all persons in the lineup were dressed the same; all were approximately the same height and weight; all but one (not the defendant) had facial hair; all wore a number tag; defendant had no markedly different physical characteristics from other persons in the lineup; and the officer conducting the photographic display told the victim to ignore letters, numbers or scratches on the photograph.

2. **Criminal Law § 66.9— photographic identification procedure—number tag on defendant's photograph different from others—no impermissible suggestiveness**

    A photographic identification procedure was not impermissibly suggestive because the number tag shown in the photograph of defendant was a police identification sign with a case number on it while handwritten number tags were used in the other photographs where each photograph showed the subject's upper torso so that attention was directed toward the face and away from any sign or tag, and where officers told the witness to disregard any signs or marks on the photographs.

3. **Criminal Law § 66.9— pretrial photographic identifications—defendant's photograph only one in two procedures—no impermissible suggestiveness**

    Pretrial photographic procedures were not impermissibly suggestive because defendant was the only person who appeared both in a photograph of a lineup and in individual photographs shown to a robbery victim, especially since the victim was shown the individual photographs ten days after seeing the lineup photograph and did not have both of them before her at the same time for comparison.

4. **Criminal Law § 66.16— in-court identification—independent origin from photographic procedures**

    A robbery victim's in-court identification of defendant was of independent origin and not tainted by pretrial photographic identification procedures where the victim had ample opportunity to view defendant in that the robbery occurred at 9:30 a.m., the lights were on in the laundry in which the robbery occurred, defendant came within eighteen inches of the victim and the victim got a close look at his face; the victim intentionally focused her eyes on defendant in order to remember his features; the victim gave the police an accurate detailed description of defendant; the victim was positive in her first photographic identification of defendant; and only seventeen days passed between the robbery and the victim's first photographic identification of defendant.

**5. Criminal Law § 50.1; Robbery § 3— ability of gun to kill—competency of testimony**

A robbery victim's testimony that the gun used by the defendant in the robbery was "one that would kill me if I didn't do what he said" was admissible as an instantaneous conclusion of the mind and did not invade the province of the jury.

**6. Robbery § 6.2— robbery indictment—ownership of property taken**

There was no fatal variance between an armed robbery indictment charging that the defendant stole seventy-eight dollars from "American Cleaners Corporation, a corporation doing business as Holiday Cleaners when Marianne Elmore Best was present and in attendance" and testimony by the victim that she worked for American Cleaning Corporation, Holiday Cleaners Division.

**7. Robbery § 4.3— armed robbery—sufficient evidence of dangerous weapon or firearm**

The State's evidence was sufficient for the jury to find that a dangerous weapon or firearm was used in a robbery so as to support defendant's conviction of armed robbery where the victim identified the object in defendant's hand as a "revolver" and as a "gun" and testified that the gun was one that would kill her if she didn't do what the robber said, notwithstanding the victim also testified that she could not remember whether the gun had a hole in its barrel and that the gun "sounded" like a blank gun when it was fired inside the cleaning establishment in which the robbery occurred.

**8. Arrest and Bail § 3.6— warrantless arrest—probable cause—exigent circumstances**

Officers had probable cause to arrest defendant for certain armed robberies based on an accomplice's confession implicating defendant and his description of defendant which matched that given by witnesses in the offense reports, and the fact that the defendant appeared to be about to check out of a motel and leave the area constituted "exigent circumstances" which excused a warrantless entry by officers into defendant's motel room and their warrantless arrest of defendant. Therefore, a photographic identification of defendant by use of a photograph taken after his arrest should not be suppressed as a product of an illegal arrest.

APPEAL by defendant from *Morgan, Judge.* Judgment entered 9 September 1983 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 27 September 1984.

On 18 May 1983, the American Cleaning Corporation, Holiday Cleaners Division, in Charlotte was robbed of approximately seventy-eight dollars. The robbery occurred at about 9:30 in the morning. Marianne Best was in the store at that time, training a new employee, Leslie Andrews. Ms. Best observed the perpetrator come into the store, pull out a gun, and say that this was a

stick-up. He ordered Ms. Best to open the cash register, which she did. The robber then took the cash on hand, and told Ms. Best and Ms. Andrews to go to the back of the store. They did this. The robber fired a shot, and left.

On the morning of 26 May 1983, Charlotte police officers arrested Charles Alexander in connection with robberies in the Charlotte area. In confessions made that morning, Alexander implicated defendant and several others in these robberies. Alexander told the police that defendant was staying at a Charlotte motel. A call to the motel indicated that the defendant had left the motel and police requested the motel clerk to call them when the defendant returned. Within fifteen or twenty minutes, the police were notified that the defendant had returned and was removing articles from his room as if in preparation to leave. They went to the motel and arrested defendant without a warrant.

On the day he was arrested, defendant was photographed individually by police. Later in the day, the police obtained warrants for defendant's arrest in connection with robberies not involved in this case. On 1 June 1983, the defendant was photographed as part of a line-up. On 29 June 1983, a warrant was issued for defendant's arrest for the robbery in the present case.

A Charlotte police officer, Officer Alsbrook, showed two line-up photographs to Ms. Best on 4 June 1983, one containing defendant. Ms. Best identified defendant in the photograph containing him, and failed to identify anyone in the photograph not containing him. Ten days later, Officer Alsbrook showed Ms. Best a stack of five individual photographs, one of which depicted defendant. Again, Ms. Best identified the defendant as perpetrator of the robbery. Ms. Best identified defendant at trial.

Defendant was convicted of armed robbery and sentenced to twenty-four years in prison. From this judgment, defendant appeals.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Jane P. Gray, for the State.*

*Ellis M. Bragg for defendant appellant.*

ARNOLD, Judge.

1. The Suppression of Identification Evidence .

Defendant contends that the trial court erred in denying his motion to suppress all evidence of a pretrial out-of-court photographic identification and the in-court identification of defendant by the witness Marianne Best. Defendant argues that the out-of-court photographic display was so suggestive and that Ms. Best's in-court identification was so unreliable that there was a substantial chance that she mistakenly identified defendant, thus causing a denial of his right to a fair trial. We disagree.

Identification evidence must be excluded as violative of the due process clause "where the facts of the case reveal a pretrial identification procedure so impermissibly suggestive that there is a substantial likelihood of irreparable misidentification." *State v. Thompson*, 303 N.C. 169, 171, 277 S.E. 2d 431, 433 (1981). In determining whether the out-of-court photographic identification is suggestive, the factors to be considered include whether the accused is somehow distinguished from others in the line-up or in a set of photographs, *see id.; State v. Smith*, 278 N.C. 476, 180 S.E. 2d 7 (1971), and whether the witness is given some extraneous information by the police which leads her to identify the accused as the perpetrator of the offense. *Id.*

[1] In the case at bar, the witness was first given a photograph of a line-up of which the defendant was a member. All persons in the line-up were dressed the same, in khaki shirts and dark pants. All were approximately the same height and weight. All but one (not the defendant) had facial hair. Four had close-cropped head hair while the other two had somewhat longer hair. All wore a number tag. As compared to the others, defendant had no markedly different physical characteristics. The witness chose defendant out of this line-up. She said she was positive about this identification. She testified that the police officer conducting the photographic display told her to ignore letters, numbers, or scratches on the photograph. We find nothing suggestive in this method of identification.

The witness was given another similar line-up photograph, which did not contain defendant. She refused to identify anyone in that photograph as the person who committed the robbery.

[2] Finally, the witness was shown individual photographs, one of which pictured the defendant. All persons in this set of photographs wore glasses, had facial hair, and had head hair approximately the same length as the defendant's. In each photo, there were number tags. Yet, in defendant's photo, the number tag was a police identification sign with a case number on it. In certain circumstances, such a sign might have impermissibly influenced the witness to identify the defendant as the robber. Clearly, the better practice for such photographic identification would have been to use a handwritten tag in defendant's photograph, as was used with the other persons. We do not find, however, that in this case the police number sign was so suggestive that it would make a misidentification substantially likely. Each photograph had some sort of numbered sign or tag, located on or to one side of the subject. Indeed, one of the subjects (not the defendant) was pictured next to a height chart. Each photo was taken of the subject's upper torso so that attention was directed towards the face and away from any sign or tag. The police told the witness to disregard any sign or marks. In light of these circumstances, the police number tag did not so taint the photo identification that it should have been excluded.

[3] Finally, we deal with the issue of repetition. Defendant was the only subject pictured in both the photo line-up and the individual photographs. Our study of the photographs convinces us that this also was not unduly suggestive, especially in light of the fact that the witness was shown the individual photographs ten days after seeing the line-up, and did not have both of them before her at the same time for comparison.

[4] Defendant contends that the in-court identification was tainted by the victim's out-of-court identification of defendant in the police photographs. Even if the photographic identification was impermissibly suggestive (and we find it was not), the central question is whether, under the totality of the circumstances, "the identification of defendant at trial was reliable and of independent origin." *State v. Headen*, 295 N.C. 437, 441, 245 S.E. 2d 706, 710 (1978). In assessing the reliability and independent origin of the identification, we must consider: the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of her prior description of the criminal, the level of certainty demonstrated at the confrontation, and the

time between the crime and the confrontation. *Headen,* 295 N.C. at 442, 245 S.E. 2d at 710.

Opportunity to view: Ms. Best had ample opportunity to view the defendant. The crime occurred at around 9:30 in the morning. All the lights were on in the laundry. Nothing obstructed Ms. Best's view of defendant. He came within eighteen inches of her, and she got a close look at his face. She was not wearing her prescribed eyeglasses that day, but she was farsighted, so that whether she wore them or not made no difference as to her capacity to identify the robber.

Degree of attention: We are convinced that Ms. Best intentionally focused her eyes on the defendant in order to remember his features. Unlike Ms. Andrews, the other shop assistant, who became upset, Ms. Best had considerable control of herself during the crime.

Accuracy of the description: Ms. Best gave police officers a detailed description of defendant. It was accurate, as to height, weight, and facial pockmarks. Ms. Best described no particular features defendant did not possess. Nor did he have any outstanding feature she failed to mention.

Witness's level of certainty: Ms. Best said she was absolutely positive in her identification of defendant in the first line-up photo. In court as well, she appeared to have no problem in identifying him.

Time between the crime and the confrontation: The crime occurred on 18 May 1983. Within a week after the crime, Ms. Best was shown the photo of the line-up that did not contain defendant. She was shown the photo of the line-up that contained defendant on 4 June 1983 and positively identified him. She was shown the individual photographs on 14 June 1983. Trial occurred in early September, 1983. The time between the crime and Ms. Best's photo identification was relatively short. The time between the crime and her in-court identification was not so long as to make the identification doubtful.

Weighing the factors in this case we do not find reason to doubt the reliability and independent origin of Ms. Best's in-court identification, even had the photographic identification been impermissibly suggestive.

## 2. Admissibility of "Opinion" Testimony

[5] The defendant contends further that the trial court erred in admitting testimony of Marianne Best to the effect that she believed that the gun used in the robbery would kill her if she did not do what the robber said. The defendant argues that such testimony was an unsupported statement of opinion that invaded the province of the jury to decide whether the robber used a dangerous weapon and so threatened Ms. Best's or Ms. Andrews's life.

Opinion evidence is generally inadmissible if the witness can relate the facts "so that the jury will have an adequate understanding of them and the jury is as well-qualified as the witness to draw inferences and conclusions from the facts." 1 Stansbury's North Carolina Evidence § 124 (Brandis rev. 1973), *quoted in State v. Lucas*, 302 N.C. 342, 348, 275 S.E. 2d 433, 437 (1981). The "opinion rule" forces the witness to give as detailed a recital of his or her perception of the facts as is reasonably possible. The rule appears to have two purposes: to test the witness's perception of the facts, and to prevent the witness from unfairly influencing the jury's conclusions. 1 Brandis on North Carolina Evidence § 123 (2d rev. ed. 1982). The rule has been much-criticized, and is subject to a number of exceptions, *see id.* at § 125. One of these, which we feel applies in this case, is that a witness may testify as to "instantaneous conclusions . . . derived from observation of a variety of facts presented to the senses at one and the same time." *State v. Joyner*, 301 N.C. 18, 23, 269 S.E. 2d 125, 129 (1980).

In this case, the prosecution seeks to prove that defendant is guilty of armed robbery as defined in G.S. 14-87(a). Two elements of that crime are (1) that the accused had in possession, used or threatened to use a firearm or other dangerous weapon and (2) that he used it to endanger or threaten the life of another person. The defendant alleges that the witness, Ms. Best, should not have been allowed to testify directly that the gun in the robber's hand was one that would kill her if she did not do what he said. Defendant argues that she was testifying directly as to the ultimate fact that the weapon was dangerous and threatened her life. This, the defendant says, the jury should have decided without her testimony.

Ms. Best positively identified the object in the defendant's hand as a "revolver," and as "a gun." The prosecuting attorney then asked her what type it was:

Q. *At the time that the gun was being pointed at you across the counter,* did you know what kind of gun it was?

Mr. Bragg: Objection

The Court: Overruled.

A. No, only that it was a revolver.

Q. Do you know to this date what kind of gun it was?

A. No I do not.

Q. What kind of gun *did you believe it to be?*

Mr. Bragg: Objection.

The Court: Overruled.

A. One that would kill me if I didn't do what he said. (Emphasis added.)

Ms. Best was thus being asked, since she did not know the make or type of gun the robber pointed at her, what was her belief or impression at the time as to the type of gun the robber held. Her belief at the time of the crime was an "instantaneous conclusion," drawn from observation of a variety of facts at once. *See Joyner,* 301 N.C. at 23, 269 S.E. 2d at 129. It was an "opinion" which in a legal sense was a "fact," helpful to the jury in comprehending what happened the morning of 18 May. The jury's province was not invaded by allowing it to consider and weigh this evidence along with Ms. Best's "opinion" that the gunshot sounded like that from a starter's pistol, and her failure to remember whether the gun had a hole in the barrel.

3. Variance between the indictment and the proof

[6] The defendant contends next that there was a fatal variance between the allegations in the indictment and the evidence at trial as to the location of the alleged robbery and the person or entity from whom personal property was taken. The indictment read that defendant stole seventy-eight dollars from "American Cleaners Corporation, a corporation doing business as Holiday

Cleaners when Marianne Elmore Best was present and in attendance." Ms. Best testified on direct examination that she worked for American Cleaning Corporation, Holiday Cleaners Division. On cross-examination, she said she worked for Americana Cleaning Corporation.

"[A] fatal variance results in larceny cases where title to the property is laid in one person by the indictment and proof shows it in another." *State v. Spillars*, 280 N.C. 341, 345, 185 S.E. 2d 881, 884 (1972); *see also State v. Law*, 227 N.C. 103, 104, 40 S.E. 2d 699, 700 (1946). In the case at bar, the testimony at trial did not show that the money stolen was taken from a business other than the Holiday Cleaners where Ms. Best was employed, or that there were two corporations, one called the American Cleaners Corporation and the other called the Americana Cleaning Corporation, both operating businesses called Holiday Cleaners. It only showed a slight discrepancy between the corporate name given in the indictment and that given by Ms. Best. We are not convinced that there was a fatal variance between the allegations of the indictment and the proof at trial, such that crimes at two different places of business were described.

4. Denial of defendant's motion for judgment as of nonsuit and for dismissal

[7]   Defendant contends also that the trial court erred in denying his motion for judgment as of nonsuit and for dismissal when there was insufficient evidence as a matter of law of the commission of a robbery with a firearm or dangerous weapon as provided in G.S. 14-87(a). In ruling on the defendant's motions, the trial court must determine whether there is substantial evidence on every element of the offense charged, interpreting the evidence in the light most favorable to the State. *State v. Wright*, 302 N.C. 122, 126, 273 S.E. 2d 699, 703 (1981); *State v. Quick*, 60 N.C. App. 771, 772-73, 299 S.E. 2d 815, 816 (1983). The defendant argues that the State failed to provide "substantial evidence" that a dangerous weapon or firearm was used in the commission of the robbery at Holiday Cleaners.

The State provided testimony by Ms. Best that the robber held a "revolver," and a "gun." She testified further that she could not remember whether it had a hole in its barrel, but that it was the type of gun that could kill her, *i.e.*, that it was a real gun.

She also testified that when the gun was fired inside the cleaning establishment, it *sounded* like a blank gun. The State elicited from Ms. Best that the building was made of cinder block, and that the ceiling was partially cinder block and partially, as we understand, ceiling tiles on runners. Ms. Best and Ms. Andrews were standing at the rear of the building when the shot was fired, where there were four racks of clothes, each thirty feet long, and various pieces of dry-cleaning and ironing equipment. Drawing all inferences in favor of the State, we conclude that the jury had substantial evidence to conclude that the gun was a real and dangerous weapon, and that the sound of the shot was affected by the accoustical properties of the building.

5. Lawfulness of the warrantless arrest

[8] Defendant contends finally that the trial court erred in concluding as a matter of law that he was under lawful arrest at the time he was photographed. The issues we face are whether the police had probable cause to arrest defendant and whether "exigent circumstances" excused their obtaining an arrest warrant.

On the morning of 26 May 1983, the Charlotte police arrested Charles Alexander. Mr. Alexander had been staying at the New Imperial Motel in Charlotte, and was suspected of being involved in armed robberies in the Charlotte area. At 9:45 a.m., Alexander signed a statement implicating the defendant and several other persons in two of nine armed robberies Alexander had committed. Alexander gave a description of defendant which matched that given in offense reports the police had for robberies in Charlotte. The information given by Alexander, together with the fact that his description of defendant matched that given by witnesses in the offense reports, gave the police a reasonable ground to believe that defendant had participated in armed robberies in Charlotte. They therefore had probable cause to arrest him. *See State v. Alexander*, 279 N.C. 527, 532, 184 S.E. 2d 274, 278 (1971).

Alexander told the police that defendant was also staying at the New Imperial Motel, in the same room Alexander had occupied. At 10:00 a.m., the police called the motel clerk, who informed them that defendant had recently left the motel with another person. The police asked the clerk to call them when defendant returned. The police were in the process of making out warrants when the clerk called and informed the police that

defendant had returned and was taking articles out of the motel room as if in preparation to leave. This occurred fifteen to twenty minutes after the police called the motel. On hearing that defendant was leaving, the police immediately went to the motel. They arrested defendant in his room without a warrant at 10:25 a.m.

Applying the "totality of the circumstances" test adopted in *State v. Yananokwiak*, 65 N.C. App. 513, 517, 309 S.E. 2d 560, 563 (1983), we hold that the fact that the defendant appeared to be about to check out of the motel and leave the area, and that he was suspected of having participated in more than one violent offense, constituted "exigent circumstances" which excused the warrantless entry into defendant's motel room and arrest. Thus, the testimony as to identification of defendant, resulting from the use of a photograph of defendant taken after his arrest but before warrants were secured, should not be suppressed under the rule of *State v. Accor*, 277 N.C. 65, 84, 175 S.E. 2d 583, 595 (1970), as the product of an illegal arrest.

No error.

Judges WELLS and HILL concur.