An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA14-1113

Filed: 5 May 2015

Wake County, Nos. 12 CRS 223032, 13 CRS 204337

STATE OF NORTH CAROLINA

v.

JULI ANN WILLIAMS

Appeal by Defendant from judgment entered 17 January 2014 by Judge Michael R. Morgan in Wake County Superior Court. Heard in the Court of Appeals 4 March 2015.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Harriet F. Worley, for the State.*
>
> *Charlotte Gail Blake for Defendant.*

STEPHENS, Judge.

*Factual and Procedural Background*

On 21 May 2013, Defendant Juli Ann Williams was indicted on two counts of felony embezzlement by a public officer or trustee under N.C. Gen. Stat. § 14-92. The charges arose during Defendant's service as president of the Parent Teacher

Association ("PTA") of Forestville Road Elementary School ("the school") in Knightdale from August 2011 to September 2012.

The evidence at trial tended to show the following: During the 2011-2012 school year, another parent had solicited a total of $1,500.00 in contributions for the PTA from three local Kohl's stores ("the Kohl's money"). The PTA did not have an active treasurer over the summer of 2012 when the parent expected the checks to arrive, so she asked Defendant on several occasions whether the checks had been received and deposited in the PTA bank account. Defendant told the parent the Kohl's money had not yet arrived and continued to give the same response to other PTA members in the fall of 2012. However, testimony from former PTA board members as well as the PTA's bank statements showed that, on 20 July 2012, Defendant deposited the Kohl's money into the PTA account and immediately withdrew $1,500.00 in cash from the same account. Defendant did not complete the forms required by the PTA for making deposits or follow PTA procedures for handling large deposits. At some point in July 2012, Defendant had asked the school's principal to decide how the PTA could best spend the money to benefit the school, and the principal stated that she wanted to purchase "smart" boards for classrooms. However, no evidence indicated that Defendant used the cash she withdrew on 20 July 2012 for smart boards or any other school-related project.

In September 2012, the PTA conducted a fundraiser with the help of a professional fundraising consultant. On the evening of 26 September 2012, Defendant emailed PTA board members and asked for someone to meet her at the school the following morning to help count the fundraising proceeds and deposit them in the PTA bank account. No other PTA board member was able to join Defendant the following morning. In violation of PTA rules, Defendant sat in the school office and counted the fundraising money by herself. When she finished, Defendant showed the school's bookkeeper that she had separated the checks into one bag and the cash in another. Defendant then told school staff that she was going to deposit the money into the PTA bank account.

Shortly thereafter, Officer Travis Price of the Knightdale Police Department responded to a report of a breaking and entering of a motor vehicle at a local bank. When Officer Price arrived, Defendant reported that, on the way to deposit the fundraising money at the bank, she had stopped at Walgreens to make a purchase. Defendant said she had started to drive away, but after realizing she had forgotten to buy cigarettes, returned to the Walgreens. After making the second purchase, Defendant drove toward the bank. On her way, she noticed that her purse had been dumped out in the car floorboard and a GPS unit was missing. As Defendant and Officer Price stood in the bank parking lot, Defendant stated that she needed to make a deposit for the PTA and took out a bank bag from her car's glove compartment.

Defendant unzipped the bank bag, found only a plastic bag containing checks, and told Officer Price that a second plastic bag containing $4,129.00 in cash was missing from the bank bag. At trial, Officer Price testified that he was suspicious about Defendant's story because, in his experience, a thief would not take the time to unzip the bank bag, remove only the cash, re-zip the bag, return the bank bag to the glove compartment, and then close the glove compartment before fleeing.

The withdrawal of the Kohl's money and the disappearance of the fundraising money resulted in Defendant's arrest in October 2012. In May 2013, she was indicted on two counts of embezzlement. Defendant was tried before a jury at the 14 January 2014 criminal session of Wake County Superior Court. At the close of the State's evidence, Defendant moved to dismiss the charges for insufficiency of the evidence and for a fatal variance between the State's evidence and the crime charged in the indictments. The trial court denied the motion, and Defendant presented evidence. At the close of all evidence, she renewed her motion to dismiss on both bases, and the trial court again denied it. The jury returned guilty verdicts on both charges, and the trial court, after finding one aggravating factor and no mitigating factors, sentenced Defendant to an aggravated sentence of 23 to 37 months in prison, suspended the sentence and placed Defendant on 48 months of supervised probation, and required as a special condition of probation that Defendant serve a six-month active sentence. Defendant gave notice of appeal in open court.

*Discussion*

On appeal, Defendant brings forward three arguments, that the trial court erred in (1) denying her motion to dismiss based on a fatal variance between the indictments and the evidence presented at trial, (2) sentencing her to a term of probation which exceeded the permitted statutory period, and (3) ordering her to pay an amount of restitution not supported by sufficient evidence. We find no error in part, but reverse and remand on the issue of restitution.

*I. Fatal variance between indictments and evidence*

Defendant argues that the trial court erred in denying her motion to dismiss for a fatal variance between the indictments and the evidence presented at trial. Specifically, Defendant contends that the indictments (1) did not correctly allege the victim of the offense and (2) incorrectly alleged that Defendant was a public officer or trustee, an element required by the statute under which Defendant was charged. We disagree.

We review a trial court's ruling on a motion to dismiss based upon an alleged fatal variance in an indictment *de novo*. *State v. Call*, 349 N.C. 382, 424, 508 S.E.2d 496, 522 (1998). "Where an indictment charges the defendant with a crime against someone other than the actual victim, the variance is fatal." *State v. Abraham*, 338 N.C. 315, 340, 451 S.E.2d 131, 144 (1994) (citation omitted).

Here, the indictments alleged that the victim was "Forestville Elementary School-Knightdale." However, the evidence at trial was that Defendant embezzled from the PTA affiliated with Forestville *Road* Elementary School in Knightdale. Defendant first notes that the PTA is a separate entity from the school. We agree, but in an indictment for embezzlement, "the State is not limited to alleging ownership in the legal owner but may allege ownership in anyone else who has a special property interest recognized by law." *State v. Kornegay*, 313 N.C. 1, 27, 326 S.E.2d 881, 900 (1985). Here, the uncontradicted evidence showed that the money Defendant was alleged to have embezzled was raised by the PTA explicitly and exclusively for the benefit of the school. Thus, the school was properly named in the indictments as the victim of Defendant's embezzlement.

Even assuming that the school had a special property interest in the embezzled money, Defendant further contends that the discrepancy between the school's actual name and the name that appears in the indictments is similar to the discrepancies in *State v. Bell*, 270 N.C. 25, 153 S.E.2d 741 (1967) and *State v. Overman*, 257 N.C. 464, 125 S.E.2d 920 (1962), two cases in which variances in the names of the alleged victims were determined to be fatal. We find those cases easily distinguishable. Both cases involved indictments that listed the wrong first name or surname of an individual victim ("Jean Rogers" instead of "Susan Rogers" in *Bell* and "Frank E. Nutley" rather than the correct "Frank E. Hatley" in *Overman*). Here, in contrast,

the indictment did not incorrectly name the school, but merely omitted the word "Road." We find this omission more analogous to the omission in *State v. Whitley*, 208 N.C. 661, 662, 182 S.E. 338, 339 (1935), where an indictment correctly listed the victim's proper name, "Cannon Mills Company," but some witnesses referred to the entity as "Cannon Mills." Our Supreme Court found this variance was not fatal. *Id.*; *see also State v. Wallace*, 71 N.C. App. 681, 688-89, 323 S.E.2d 403, 409 (1984) (finding no fatal variance where there was a "slight discrepancy between the corporate name given in the indictment [American Cleaners Corporation, a corporation doing business as Holiday Cleaners] and the name given by an employee at trial [American Cleaning Corporation, Holiday Cleaners Division]") (internal quotation marks omitted), *disc. review denied*, 313 N.C. 611, 332 S.E.2d 82 (1985). Accordingly, we hold that the omission of the word "Road" from the name of the school was not a fatal variance.

Finally, Defendant argues that a fatal variance exists because the indictment alleged that Defendant was "an officer or trustee of a local board of education or educational institution" while the evidence at trial failed to show that Defendant held such a position. Section 14-92 of our General Statutes, entitled "Embezzlement of funds by public officers and trustees," provides that,

> [i]f an officer, agent, or employee of an entity listed below [including a local board of education or educational institution], or a person having or holding money or property in trust for one of the listed entities, shall

embezzle or otherwise willfully and corruptly use or misapply the same for any purpose other than that for which such moneys or property is held, such person shall be guilty of a felony. . . .

N.C. Gen. Stat. § 14-92 (2013). In *State v. Kennedy*, a retailer was charged under section 14-92 after he collected county sales and use taxes from purchasers, but failed to turn those monies over to the county. 130 N.C. App. 399, 400-01, 503 S.E.2d 133, 133-34 (1998), *affirmed*, 350 N.C. 87, 511 S.E.2d 305 (1999). The defendant "contend[ed] that he did not hold the taxes 'in trust' as required for conviction under" section 14-92. *Id.* at 401, 503 S.E.2d at 134. Although agreeing with the "defendant that the collection of sales taxes by a retailer lacks some of the trappings of a traditional trust," this Court held "that a purchaser pays sales taxes to a retailer as 'trustee' for the state and county[.]" *Id.* at 401-02, 503 S.E.2d at 134. Likewise here, while we agree with Defendant's assertion that there was no evidence of an express trust, there was sufficient evidence that the PTA held the money at issue in a constructive trust for the school's benefit. *See, e.g.*, *Teachey v. Gurley*, 214 N.C. 288, 292, 199 S.E. 83, 87 (1938) ("[C]onstructive trusts . . . are such as are raised by equity in respect to property . . . where though acquired originally without fraud, it is against equity that it should be retained by him who holds it. This type of trust likewise arises purely by construction of equity independently of any contract or of any actual or presumed intention of the parties to create a trust."). The indictments here alleged that Defendant "held the position of PTA President, an officer or trustee of a local

board of education or educational institution, and in that capacity had been entrusted to receive" the fundraising money and the Kohl's money on behalf of the school. The evidence showed that these monies were donated or raised for the benefit of the school, and the school's principal testified that Defendant told the principal to decide how the money should be spent. We reject each of Defendant's arguments that there was a fatal variance between the indictments and the evidence at trial and hold that the trial court did not err in denying Defendant's motion to dismiss.

*II. Defendant's sentence*

Defendant next argues that the trial court erred in sentencing her to an intermediate punishment which exceeded the permitted statutory period. We disagree.

We will review whether a defendant's sentence "was unauthorized at the time imposed, exceeded the maximum authorized by law, was illegally imposed, or is otherwise invalid as a matter of law" regardless of whether any objection was made at trial. *See* N.C. Gen. Stat. § 15A-1446(d)(18) (2013).

> "Alleged statutory errors are questions of law, and as such, are reviewed *de novo*." *State v. Mackey*, 209 N.C. App. 116, 118, 708 S.E.2d 719, 721 (2011) (citations omitted). By statute, the maximum length of probation that the trial court may impose is thirty-six months "[u]nless the court makes specific findings that longer or shorter periods of probation are necessary." N.C. Gen. Stat. § 15A-1343.2(d) (2011). If such findings are made, the probation may extend up to five years (sixty months). *Id.* Yet the statute merely requires a finding that a longer term is needed; it

> does not require [a] detailed rationale. *See State v. Mucci*, 163 N.C. App. 615, 625, 594 S.E.2d 411, 418 (2004) ("[W]e must remand this case for re-sentencing in order for the trial court to either impose a probation term consistent with the statute or to make the appropriate finding of fact *that a longer probationary period is necessary*." (emphasis added and citation omitted)); *State v. Cardwell*, 133 N.C. App. 496, 509, 516 S.E.2d 388, 397 (1999) ("The trial court may either reduce [the d]efendant's probation to the statutory period or may enter a finding that the longer period is necessary." (emphasis added)).

*State v. Wilkerson*, __ N.C. App. __, __, 733 S.E.2d 181, 184 (2012).

Here, Defendant was convicted of two Class F felonies and received a consolidated intermediate sentence in the aggravated range. The trial court sentenced Defendant to an active term of six months in prison followed by 48 months of supervised probation. The trial court marked a preprinted box on the judgment form indicting that a "longer" period of probation than normally provided for in section 15A-1343.2(d) was necessary in Defendant's case. Under *Wilkerson*, this finding is sufficient to support the imposition of an extended period of supervised probation. Further, just as the court in *Wilkerson* "went beyond the statutory requirement" by referencing the evidence which supported its decision, *see id.*, the trial court here made statements in open court which explained its rationale for imposing the longer period of probation, to wit, that Defendant had previously been convicted of forgery more than ten years before and had violated probation in the

past. Accordingly, we conclude the trial court made the required finding to support its imposition of an extended term of probation. This argument is overruled.

### III. Amount of restitution

Finally, Defendant argues that the trial court erred in ordering her to pay an amount of restitution not supported by sufficient evidence. Specifically, Defendant was ordered to pay $2,500.00 in restitution to cover the cost of an audit of the PTA. Defendant contends that this amount was not supported by evidence presented to the trial court. We agree.

"[E]ven where a defendant does not specifically object to the trial court's entry of an award of restitution, this issue is deemed preserved for appellate review under N.C. Gen. Stat. § 15A-1446(d)(18)." *State v. Replogle*, 181 N.C. App. 579, 584, 640 S.E.2d 757, 761 (2007) (citations and internal quotation marks omitted). We review the sufficiency of the evidence to support an award of restitution *de novo*. *State v. Wright*, 212 N.C. App. 640, 711 S.E.2d 979, 801, *disc. review denied*, 365 N.C. 351, 717 S.E.2d 743 (2011). "The amount of restitution recommended by the trial court must be supported by evidence adduced at trial or at sentencing. Furthermore, this Court has held that the unsworn statements of the prosecutor do not constitute evidence and cannot support the amount of restitution recommended." *Replogle*, 181 N.C. App. at 584, 640 S.E.2d at 761 (citation, internal quotation marks, brackets, and ellipsis omitted). Here, as Defendant notes and the State concedes, the prosecutor

informed the trial court that the PTA spent $2,500.00 for an audit following the disappearance of the fundraising money, but no documentation, testimony, or other evidence regarding the cost of the audit was introduced.   We cannot distinguish the facts of this case from those in *Replogle*, and accordingly, as in that case, "we reverse on the issue of restitution and remand to the trial court for resentencing consistent with this decision." *See id.*

NO ERROR in part; REVERSED and REMANDED in part.

Judges HUNTER, JR., and TYSON concur.

Report per Rule 30(e).